D. Maimon Kirschenbaum
Denise A. Schulman
Charles E. Joseph
**JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM LLP**
757 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 688-5640
Facsimile: (212) 688-2548

Justin M. Swartz
Rachel Bien
Sonia R. Lin
**OUTTEN & GOLDEN LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile (212) 977-4005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STEPHANIE CAPSOLAS, HERNAN RICARDO ALVARADO, JEFFREY CUTAIAR, NICOLE MEDVITZ, PAUL TORO, DANIEL JANSON, ROGER CARO, CHRIS ELL, CHRIS FORBES, JESSE PATRICK, and DIANA DIETRICH, on behalf of themselves and other similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**PASTA RESOURCES INC., BABBO LLC d/b/a BABBO RISTORANTE ENOTECA, PANE SARDO LLC d/b/a OTTO ENOTECA PIZZERIA, EL MONO LLC d/b/a CASA MONO and BAR JAMON, LA LOGGIA LLC d/b/a TARRY LODGE, MARIO BATALI, and JOSEPH BASTIANICH,**<br><br>Defendants. | **No. 10-cv-5595 (RJH)** |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR CONDITIONAL
## CERTIFICATION AND COURT-AUTHORIZED
## NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................1

I.      The Parties. ..............................................................................................1

II.     The Batali Group Restaurants Are a Centrally Controlled, Uniform Operation. ....3

        A.      The Batali Group Restaurants Share Ownership and Branding.............3

        B.      The Batali Group Restaurants Subject Workers to Uniform
                Compensation Policies and Practices......................................................5

        1.      Defendants Pay All Workers Less than the Minimum Wage. ..............5

        2.      Defendants Withhold Tips from All Service Employees. ....................5

        3.      Defendants Failed to Inform Workers About the Tip-Credit Provisions
                of the FLSA...................................................................................6

III.    Defendant Bastianich Has Sought to Intimidate Workers. ....................................7

ARGUMENT ............................................................................................................8

I.      Court-Authorized Notice Is Fair, Efficient, and Advances Public Policy Aims. ....8

        A.      Prompt Notice Would Serve the Goals of the FLSA.............................8

        B.      Notice Is Crucial, Given Defendants' Intimidation. ..............................9

II.     Plaintiffs Exceed Their Low Burden Under 29 U.S.C. § 216(b). .........................10

        A.      Plaintiffs and Potential Plaintiffs Are Similarly Situated with Respect
                to Their FLSA Claims.........................................................................12

        B.      Defendants Failed to Pay Any Plaintiff or Potential Plaintiff the
                Required Minimum Wage...................................................................13

        1.      Defendants Did Not Inform Plaintiffs of the Provisions of §203(m).  14

        2.      Defendants Retained a Portion of Employees' Tips for Themselves . 15

III.    The Court Should Approve Plaintiffs' Proposed Notice. ....................................16

IV.  The Court Should Require Defendants to Post the Notice in All of Their New York Restaurants...............................................................................................17

V.  Discovery Of Names, Addresses, Telephone Numbers, and Social Security Numbers Is Proper and Necessary Under § 216(b). ...............................................18

CONCLUSION.................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alonso v. Uncle Jack's Steakhouse*,
  648 F. Supp. 2d 484 (S.D.N.Y. 2009)..................................................................15

*Anglada v. Linens 'n Things, Inc.*,
  No. 06 Civ. 12901, 2007 WL 15525117 (S.D.N.Y. May 29, 2007)......................18

*Belt v. Emcare, Inc.*,
  299 F. Supp. 2d 664 (E.D. Tex. 2003)..................................................................17

*Bernal v. Vankar Enter., Inc.*,
  No. SA-07-CA-695-XR, 2008 WL 791963 (W.D. Tex. March 24, 2008)............16

*Bowens v. Atl. Maint. Corp.*,
  546 F. Supp. 2d 55 (E.D.N.Y. 2008) ....................................................................12

*Braunstein v. E. Photo Labs., Inc.*,
  600 F.2d 335 (2d Cir. 1975).................................................................................9

*Bursell v. Tommy's Seafood Steakhouse*,
  No. H-06-0386, 2006 WL 3227334 (S.D. Tex. Nov. 3, 2006)..............................16

*Cao v. Chandara Corp.*,
  No. 00 Civ. 8057(SAS), 2001 WL 34366628 (S.D.N.Y. July 25, 2001) ...............14

*Carter v. Indianapolis Power & Light Co.*,
  No. IP 1:02-CV-01812-SEB-VSS, 2003 WL 23142183 (S.D. Ind. Dec. 23,
  2003) ....................................................................................................................12

*Chan v. Sung Yue Tung Corp.*,
  No. 03 Civ. 6048 (GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)....................14

*Chan v. Triple 8 Palace, Inc.*,
  No. 03 Civ 6048(GEL), 2006 WL 851749 (S.D.N.Y. March 30, 2006) ................15

*Chung v. New Silver Palace Rest.*,
  246 F. Supp. 2d 220 (S.D.N.Y. 2002)...................................................................13

*Cruz v. Hook-SupeRX, L.L.C.*,
  No. 09 Civ. 7717 (PAC), 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010).........9, 10, 11

*Cuzco v. Orion Builders, Inc.*,
  477 F. Supp. 2d 628 (S.D.N.Y. 2007)..............................................................12, 17

*Delaney v. Geisha NYC, LLC*,
  261 F.R.D. 55 (S.D.N.Y. 2009) ...........................................................................10, 11, 12, 15

*Diaz v. Scores Holding Co.*,
  No. 07 Civ. 8718 (RMB), 2008 WL 7863502 (S.D.N.Y. May 9, 2008) ...........................10, 16

*Dominguez v. Don Pedro Rest.*,
  2:06 Civ. 241, 2007 WL 271567 (N.D. Ind. January 25, 2007) .......................................15, 16

*Dumitrescu v. Mr. Chow Enters.*,
  No. 07 Civ. 3601 (PKL), 2008 WL 2600667 (S.D.N.Y. June 30, 2008)................................16

*Fasanelli v. Heartland Brewery, Inc.*,
  516 F. Supp. 2d 317 (S.D.N.Y. 2007)....................................................................12, 16, 17

*Garcia v. Pancho Villa's of Huntington Village, Inc.*,
  678 F. Supp. 2d 89 (E.D.N.Y. 2010) ...........................................................................10, 15

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
  282 F. Supp. 2d 101 (S.D.N.Y. 2003)...........................................................................10, 11

*Greene v. C.B. Holding Corp.*,
  1:10-cv-01094, 2010 WL 3516566 (E.D.N.Y. Aug. 12, 2010) .......................................11, 15

*Harrington v. Educ. Mgmt. Corp.*,
  No. 02 Civ. 0787(HB), 2002 WL 1009463 (S.D.N.Y. May 17, 2002)...................................12

*Hoffman-La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989).......................................................................................................8, 9, 16

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997).....................................................................................10

*Jackson v. Papa John's USA, Inc.*,
  No. 1:08-CV-2791, 2009 WL 385580 (N.D. Ohio Feb. 13, 2009).........................................12

*Ke v. Saigon Grill, Inc.*,
  595 F. Supp. 2d 240 (S.D.N.Y. 2008)..................................................................................14

*Khalil v. The Original Homstead Rest. Inc.*,
  No. 07 Civ. 695(RJH), 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007) ...................................16

*Krueger v. N.Y. Tele. Co.*,
  Nos. 93 Civ. 0178-79, 1993 WL 276058 (S.D.N.Y. July 21, 1993)......................................11

*Laroque v. Domino's Pizza*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) .................................................................................12

v

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) .......................................................................17

*Legrand v. Educ. Mgmt. Corp.*,
    No. 03-9798 (HB) (HBP), 2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004)................12

*Lynch v. United Servs. Auto Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................................................11

*Masson v. Ecolab, Inc.*,
    No. 04 Civ. 4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005)............12

*Nicholson v. Twelfth Street Corp.*,
    No. 09 Civ. 1984 (HB), 2010 WL 1780957 (S.D.N.Y. May 4, 2010)...............13, 15

*Patton v. Thomson Corp.*,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ...............................................................18

*Pefanis v. Westway Diner, Inc.*,
    No. 08 Civ. 002(DLC), 2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008).....................9, 12, 15, 16

*Pefanis v. Westway Diner, Inc.*,
    No. 08 Civ. 002(DLC), 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010) ..................17

*Pendlebury v. Starbucks Coffee Co.*,
    No. 04-CV-80521, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) ................................12

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998)....................................................9, 10, 12, 16

*Richards v. Computer Science Corp.*,
    No. 3:03CV630(DJS), 2004 WL 3517039 (D. Conn. Sept. 28, 2004) ...................12

*Roebuck v. Hudson Valley Farms, Inc.*,
    239 F. Supp. 2d 234 (N.D.N.Y. 2002) ................................................................12

*Ruggles v. WellPoint, Inc.*,
    591 F. Supp. 2d 150 (N.D.N.Y. 2008) ..................................................................9

*Schwed v. Gen. Elec. Co.*,
    159 F.R.D. 373 (N.D.N.Y. 1995).........................................................................12

*Shajan v. Barolo Ltd.*,
    No. 10 Civ. 1385 (CM), 2010 WL 2218095 (S.D.N.Y. June 2, 2010)..............11, 15

*Sherrill v. Sutherland Global Servs., Inc.*,
    487 F. Supp. 2d 344 (W.D.N.Y. 2007) ................................................................18

*Sipas v. Sammy's Fishbox, Inc.*,
   No. 05 Civ. 10319 (PAC), 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006) .........................9, 16

*Spicer v. Pier Sixty LLC*,
   No. 08 Civ. 10240, 2010 WL 3023037 (S.D.N.Y. July 26, 2010) ...........................................18

*Torres v. Gristede's Oper. Corp.*,
   No. 04 Civ. 3316 (PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).........................10, 11

*Vance v. Ala Carte Entertainment, Inc.*,
   No. 01 Civ. 5817, 2003 WL 24311811 (N.D. Ill. April 14, 2003) .........................................15

*Vaughan v. Mortgage Source LLC*,
   No. 08 Civ. 4737, 2010 WL 1528521 (E.D.N.Y. April 14, 2010) .....................................9, 17

*Williams v. Le Chaperon Rouge*,
   No. 1:07-CV-829, 2007 WL 2344738 (N.D. Ohio Aug. 14, 2007).........................................12

*Young v. Cooper Cameron Corp.*,
   229 F.R.D. 50 (S.D.N.Y. 2005) .............................................................................................12

*Zhao v. Benihana, Inc.*,
   No. 01 Civ. 1297(KMW), 2001 WL 845000 (S.D.N.Y. May 7, 2001)............................15, 16

Sᴛᴀᴛᴜᴛᴇs

29 U.S.C. § 201........................................................................................................................8

29 U.S.C. § 203(m) ...............................................................................................................5, 13

29 U.S.C. § 203(t) ....................................................................................................................13

29 U.S.C. § 206(a) ...................................................................................................................13

29 U.S.C. § 216(b) .................................................................................................................1, 8

Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs

Charlie Rose (PBS television broadcast June 14, 2010), *available at*
   http://www.charlierose.com/view/interview/11062...................................................................3

S. Rep. No. 93-690 (1974)...........................................................................................................14

## PRELIMINARY STATEMENT

This is a case about restaurant workers – servers, bussers, runners, back waiters, and bartenders – attempting to recover unpaid tips from celebrity chef Mario Batali, his business partner Joseph Bastianich, and their self-described "uber-successful"[1] group of New York restaurants (the "Batali Group"). Through this motion, Plaintiffs seek to protect the rights of hundreds of current and former tipped employees by sending them Court-approved notice of this action and letting them decide whether to seek unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiffs far exceed their low burden on this motion. The declarations of current and former workers from five Batali Group restaurants and the Batali Group's own documents show that Defendants subjected Plaintiffs and other Batali Group tipped employees to the same unlawful practice – paying them a reduced minimum wage while simultaneously misappropriating a portion of the tips they earned from customers. These workers will benefit from prompt Court-authorized notice. This is especially true for current employees because Defendant Bastianich has embarked on a public campaign designed to dissuade workers from joining this case and protecting their rights.

## STATEMENT OF FACTS

### I. The Parties.

Defendants are a group of New York restaurants and their owners, Mario Batali ("Batali") and Joseph Bastianich ("Bastianich"). Batali is a world-renowned restaurateur, media personality and celebrity chef.[2] His business partner, Bastianich, is also a restaurateur and has

---

[1] Declaration of Rachel M. Bien in Support of Plaintiffs' Motion for Conditional Certification ("Bien Decl.") Ex. D (About Mario: Biography, http://www.mariobatali.com/about_biography.cfm (last visited Oct. 12, 2010)).

[2] Bien Decl. Ex. E (Mario Batali: Media, http://www.mariobatali.com/media.cfm (last visited Oct. 12, 2010)); Ex. F (Robin Finn, *Brunch? The Chef Has the Morning Off*, N.Y. Times, June

appeared in the media.[3]  Babbo Ristorante e Enoteca ("Babbo") is the Batali Group's flagship

restaurant.[4]  The Batali Group also includes Otto, Casa Mono, Bar Jamon, Esca, Lupa, Del Posto,

and the Spotted Pig in Manhattan, and Tarry Lodge in Port Chester, New York.[5]

Plaintiffs Stephanie Capsolas and Hernan Ricardo Alvarado work at Babbo, Capsolas as

a server and Alvarado as a back waiter.  Plaintiffs Jeffrey Cutaiar and Nicole Medvitz worked at

Otto as servers.  Plaintiffs Paul Toro, Roger Caro, and Daniel Jansen work or worked at Tarry

Lodge, Toro as a bartender, and Caro and Jansen as servers.  Plaintiffs Chris Ell and Chris

Forbes worked at Casa Mono as servers.  Plaintiff Jesse Patrick worked at Bar Jamon as a

bartender.[6]  In addition to the Plaintiffs, 13 other current and former workers ("Opt-in Plaintiffs")

---

25, 2010, at MB2, *available at* http://www.nytimes.com/2010/06/27/nyregion /27routine.html);
Ex G (Mario Batali: Chefs: Food Network, http://www.foodnetwork.com/mario-
batali/bio/index.html (last visited Oct. 12, 2010)).

[3]  Bien Decl. Ex. I (Daniel Maurer, *An Early Exclusive Look at Joe Bastianich's 'Takes No
Prisoners' Memoir*, Grub Street New York,
http://newyork.grubstreet.com/2010/10/an_early_exclusive_look_at_joe.html (last visited Oct.
13, 2010); Ex. J (Edward Lewine, *Domains: Italian Villa*, N.Y. Times, Sept. 26, 2010, at MM16,
*available at* http://www.nytimes.com/2010/09/26/magazine/26fob-domains-t.html); Ex. K
(Christine Yi, *Joe Bastianich Reconciles Passion for Food with Passion for Running*, N.Y.
Times, Oct. 28, 2008, at B19, *available at* http://www.nytimes.com/2008/10/28/sports/
othersports/28runner.html?ref=joseph_bastianich).  In 2008, Bastianich and Batali won the
James Beard Foundation Award for Outstanding Restauranteurs of the Year.  *See* Bien Decl. Ex.
L (Florence Fabricant, *Chefs Find Winners' Circle Familiar Turf*, N.Y. Times, June 11, 2008,
*available at* http://www.nytimes.com/2008/06/11/dining/11beard.html ?ref=joseph_bastianich).

[4]  Bien Decl. Ex. P (Babbo, http://www.babbonyc.com/mario2.html  ("Mario, together with his
business partner Joe Bastianich, create magic night after night in his many twelve hotspots in
New York City, Los Angeles and Las Vegas. Mario and Joe's flagship restaurant is Babbo
Ristorante e Enoteca") (last visited Oct. 12, 2010)).

[5]  Batali and Bastianich also own B&B Ristorante and Carne Vino in Las Vegas, NV, and
Pizzeria Mozza and Osteria Mozza in Los Angeles, CA.  *See* Bien Decl. Ex. D (About Mario:
Biography, http://www.mariobatali.com/about_ biography.cfm (last visited Oct. 12, 2010)).

[6]  Former Named Plaintiff Diana Dietrich voluntarily dismissed her claims against Defendants
without prejudice on August 25, 2010.  *See* Docket No. 30.

from Babbo, Otto, Tarry Lodge, Esca, Lupa, and Casa Mono have filed written consents to join this case.[7]

## II.    The Batali Group Restaurants Are a Centrally Controlled, Uniform Operation.

### A.    The Batali Group Restaurants Share Ownership and Branding.

The Batali Group restaurants' operations are interrelated and centrally controlled.  Batali and Bastianich themselves are a unifying thread.  Batali and Bastianich admit that they have ownership interests in all of the Batali Group restaurants.  (Answer at ¶ 2.)  Batali and Bastianich maintain close control over the restaurants.  Batali is in one of his restaurants "almost every single day"[8] and visits each of his New York restaurants "at least two or three times a week."[9] Bastianich is also "at the restaurants all day."[10]

Defendant Pasta Resources also ties the Batali Group restaurants together.  Pasta Resources performs centralized services for the Batali Group restaurants.  Pasta Resources issues payroll checks to workers at the Batali Group restaurants.[11]  Workers at Batali Group restaurants contact Pasta Resources regarding questions about their pay and benefits.[12]  Pasta Resources

---

[7]  In addition to the Plaintiffs in this case, more than 20 workers from Del Posto recently filed a (non-class or collective action) lawsuit bringing some of the same claims Plaintiffs bring here. Bien Decl. Ex. S (Complaint in *Amastal et al. v. Pasta Resources Inc.*, No. 10 Civ. 7748 (S.D.N.Y. October 12, 2010) ("*Amastal* Complaint").

[8]  Bien Decl. Ex. M (*Mano a Mano with Molto Mario*, MyNorthwest.com, May 30, 2009 at http://www.mynorthwest.com/?nid=408&sid=172879).  In his interview with MyNorthwest.com, Batali states that he has "a staff of 18-hundred right now" and "11 partners at different levels . . . and at each of the restaurants we operate we have a local, living, breathing partner in the kitchen and probably in the dining room."

[9]  Mario Batali interview on Charlie Rose (PBS television broadcast June 14, 2010), *available at* http://www.charlierose.com/view/interview/11062.

[10]  Bien Decl. Ex. J (Edward Lewine, *Domains: Italian Villa*, N.Y. Times, Sept. 26, 2010, at MM16, *available at* http://www.nytimes.com/2010/09/26/magazine/26fob-domains-t.html).

[11]  Bien Decl. Ex. T (Answer ¶ 17 in *Adamson v. Babbo*, No. 05 Civ. 8513 (LTS)(AJP) (S.D.N.Y.) (admitting that Pasta Resources issued payroll checks to plaintiff, a server at Babbo)).

[12]  Bien Decl. Ex EE (Declaration of Chris Forbes ("Forbes Decl.") ¶ 9).

represented Casa Mono during a government health inspection.[13]  Pasta Resources processes gift card purchases for each of the Batali Group restaurants.[14]  Bastianich has admitted to having a controlling ownership in Pasta Resources and the ability to make personnel decisions within Pasta Resources.[15]

Defendants' internet presence also demonstrates central control of the the Batali Group restaurants.  All of the Batali Group restaurants are listed on Defendant Pasta Resources' website.[16]  The individual websites for most Batali Group restaurants include a page entitled "Our Restaurants," that lists other Batali Group restaurants.[17]  Batali and Bastianich list all of the Batali Group restaurants, including Babbo, Otto, Casa Mono, Bar Jamon, Tarry Lodge, Lupa, Esca, Del Posto, and the Spotted Pig, on their personal websites.[18]

Defendants otherwise tout their restaurants' unifying thread.  Otto's website provides:

---

[13]  Bien Decl. Ex EE (Forbes Decl. ¶ 10).

[14]  Bien Decl. Ex. U (Email from Pasta Gift Cards).  Customers ordering gift cards for any of the Batali Group restaurants are directed to the same website, with the same customer service telephone number and email address.  *See,* Bien Decl. Ex. V (Order a Gift Card from Babbo Ristorante, https://www.pastagiftcards.com/?id=5; Order a Gift Card from Casa Mono, https://www.pastagiftcards.com/?id=6; Order a Gift Card from Del Posto, https://www.pastagiftcards.com/?id=1; Order a Gift Card from Esca NYC, https://www.pastagiftcards.com/?id=4, Order a Gift Card from Lupa Osteria Romana, https://www.pastagiftcards.com/?id=3, Order a Gift Card from Tarry Lodge, https://www.pastagiftcards.com/?id=11 (all websites last visited Oct. 12, 2010)).

[15]  Bien Decl. Ex. T (Answer ¶ 15 in *Adamson v. Babbo*, No. 05 Civ. 8513 (LTS)(AJP) (S.D.N.Y. filed Dec. 5, 2005)).

[16]  Bien Decl. Ex. N (Pasta Resources, Hospitality Fact Sheet, http://www.pastaresources.com/hospitality/ (last visited Oct. 12, 2010)).

[17]  *See, e.g.*, Bien Decl. Ex. O (Otto: Our Restaurants, http://www.ottopizzeria.com/our_restaurants.cfm (last visited Oct. 12, 2010).

[18]  Bien Decl. Ex. C (Mario Batali: Restaurants, http://www.mariobatali.com/restaurants.cfm (last visited Oct. 12, 2010)); Ex. H (Joseph Bastianich: My Family of Restaurants, http://www.joebastianich.com/explore_restaurants.html (last visited Oct. 12, 2010)).

While each location offers its own culinary identity, all have the signature combination of thoughtful and memorable food, intelligent wine lists, and an emphasis on living life to its absolute fullest.[19]

In addition to shared ownership and branding, Tarry Lodge and Casa Mono share a chef, Andy Nusser,[20] and Casa Mono and Bar Jamon share a wine list and employee handbook.[21]

**B.     The Batali Group Restaurants Subject Workers to Uniform Compensation Policies and Practices.**

**1.     Defendants Pay All Workers Less than the Minimum Wage.**

Defendants pay all their tipped employees less than the full federal minimum hourly wage, (unlawfully) taking advantage of a federal "tip credit" that is available only to employers who satisfy specific criteria.  29 U.S.C. § 203(m).[22]

**2.     Defendants Withhold Tips from All Service Employees.**

Misappropriating customer tips is a Batali Group policy.  At the end of every shift at Batali Group restaurants, management takes a portion of all tips.[23]  The amount management

---

[19]  Bien Decl. Ex. O (Otto: Our Restaurants, http://www.ottopizzeria.com/our_restaurants.cfm (last visited Oct. 12, 2010).

[20]  *See* Bien Decl. Ex. Q (Tarry Lodge: The Team, http://www.tarrylodge.com/team.cfm (last visited Oct. 12, 2010)); Ex. R (Casa Mono & Bar Jamon: The Team, http://www.casamononyc.com/team.cfm (last visited Oct. 12, 2010)).

[21]  Bien Decl. Ex. W (Casa Mono and Bar Jamon Employee Manual at 1).

[22]  Bien Decl. Ex. X (Declaration of Hernan Ricardo Alvarado ("Alvarado Decl.") ¶ 2); Ex. Y (Declaration of Sara Barron ("Barron Decl") ¶ 2); Ex. Z (Declaration of Henry Canosa ("Canosa Decl.") ¶ 2); Ex. AA (Declaration of Stephanie Capsolas ("Capsolas Decl.") ¶ 2); Ex. BB (Declaration of Roger Caro ("Caro Decl.") ¶ 2); Ex. CC (Declaration of Jeffrey Cutaiar ("Cutaiar Decl.") ¶ 2); Ex. DD (Declaration of Chris Ell ("Ell Decl.") ¶ 2); Ex. EE (Declaration of Chris Forbes ("Forbes Decl.") ¶ 2); Ex. FF (Declaration of Daniel Jansen ("Jansen Decl.") ¶ 2); Ex. GG (Declaration of Jesse Patrick ("Patrick Decl.") ¶ 2); Ex. HH (Declaration of Andrew Ranaudo ("Ranaudo Decl.") ¶ 2); Ex. II (Declaration of Paul Toro ("Toro Decl.") ¶ 2).

[23]  Bien Decl. Ex. X (Alvarado Decl. ¶¶ 4-6 ); Ex. Y (Barron Decl ¶¶  4-8); Ex. Z (Canosa Decl. ¶¶ 6-9); Ex. AA (Capsolas Decl. ¶¶ 4-6); Ex. BB (Caro Decl. ¶¶ 4-7); Ex. CC (Cutaiar Decl. ¶¶ 4-7); Ex. DD (Ell Decl. ¶¶ 5-7); Ex. EE (Forbes Decl. ¶¶ 5-7); Ex. FF (Jansen Decl. ¶¶ 4-7); Ex. GG (Patrick Decl. ¶¶ 6-8); Ex. HH (Ranaudo Decl. ¶¶ 4-7); Ex. II (Toro Decl. ¶¶ 4-7).  *See also* Bien Decl. Ex. JJ (Affidavit of Amanda Reade Sturgeon ("Sturgeon Aff.") ¶ 3); Ex. S (*Amastal*

takes is equal to a set percentage of the restaurant's wine sales[24] – usually either 4 or 4.5 percent,

but sometimes more, depending on the restaurant.  Management takes this money "off the top"

of employees' tips, *i.e.*, before they are allocated to each tipped employee.[25]  Managers have told

workers at several Batali Group restaurants that the tip money management takes goes to the

restaurant's "wine program," and is used to cover the restaurants' wine-related expenses.[26]

Other managers have refused to explain the policy to workers but have admitted that it is Batali

Group "policy."[27]

> ### 3.   Defendants Failed to Inform Workers About the Tip-Credit Provisions of the FLSA.

Nobody at any of the Batali Group restaurants informed workers about the tip-credit

provisions of the FLSA.[28]  Defendants did not provide this information orally[29] or in their

---

Complaint ¶ 40 ("Defendants unlawfully paid each of the plaintiffs an hourly wage rate below the federal and New York State minimum wage for regular and overtime hours worked.")

[24] *Id.*  At Tarry Lodge, the tips retained by the restaurant are calculated as a percentage of all beverage sales.

[25] *Id.*  Some of the Batali Group restaurants operate "tip pools," while others use a "tip out" system.  Under either system, the restaurant's misappropriation of tips deprives *all* tipped employees of tips to which they are entitled.  At the restaurants with tip pools, all of the tips collected are combined, or pooled.  Management takes a portion of the tip pool for itself, and the remaining portion of the tip pool is divided amongst all service staff.  At the restaurants with a tip out system, management takes money from each individual server's tips.  Each server then "tips out" a percentage of his or her remaining tips to other service employees and keeps the rest. *See* Bien Decl. Ex. Z (Canosa Decl. Ex. A (Casa Mono tip sheet)); Ex. AA (Capsolas Decl Ex. A (Babbo tip pool sheet)); Ex. BB (Caro Decl. Ex. A (Tarry Lodge tip sheet)); Ex. DD (Ell Decl. Ex. A (Casa Mono tip sheet)); Ex. EE (Forbes Decl. Ex. A (Casa Mono tip sheet)); Ex. GG (Patrick Decl. Ex. A (Bar Jamon tip sheet)); Ex. S (*Amastal* Complaint ¶ 39 ("Not all of the tips are given to the tipped employees.  Defendants currently retain between 8% and 9% of the nightly wine sales."))

[26] Bien Decl. Ex. Y (Barron Decl. ¶ 8); Ex. CC (Cutaiar Decl. ¶ 8); Ex. DD (Ell Decl. ¶ 8); Ex. EE (Forbes Decl. ¶ 8); Ex. FF (Jansen Dec. ¶ 9); Ex. GG (Patrick Decl. ¶ 9).

[27] Bien Decl. Ex. HH (Ranaudo Decl. ¶¶ 8-9).  *See also* Bien Decl. Ex. BB (Caro Decl. ¶ 10); Ex. FF (Jansen Decl. ¶ 8).

[28] Bien Decl. Ex. X (Alvarado Decl. ¶ 3); Ex. Y (Barron Decl. ¶ 3); Ex. Z (Canosa Decl. ¶¶ 3-5); Ex. AA (Capsolas Decl. ¶ 3); Ex. BB (Caro Decl. ¶ 3); Ex. CC (Cutaiar Decl. ¶ 3); Ex. DD (Ell

Employee Manuals.[30]

## III.   Defendant Bastianich Has Sought to Intimidate Workers.

Defendant Bastianich has used his quasi-celebrity status and his position as an employer to intimidate Plaintiffs and discourage others from participating in the lawsuit.  Bastianich has publicly referred to this lawsuit as a "shake down" and "bullshit." [31]  In addition, shortly after the filing of this lawsuit, Defendant Bastianich gave a speech to Babbo employees in which he vowed to "fight" the employees bringing the lawsuit and told employees that joining the lawsuit would benefit lawyers and not workers.[32]  At Tarry Lodge, Bastianich made a show of sarcastically "thanking" Plaintiff Daniel Jansen for suing him in front of at least ten of Jansen's co-workers.[33]  Similarly, Bastianich sarcastically "congratulated" Plaintiff Paul Toro on this lawsuit in front of coworkers.[34]

Bastianich's bad example has, at the very least, contributed to ongoing retaliation against Plaintiffs Capsolas and Alvarado, the two Plaintiffs who initiated this litigation.  On two occasions since Bastianich's speech at Babbo, someone has vandalized Capsolas' locker at work by writing the word "Rat" on it.[35]  Defendants also changed Plaintiff Stephanie Capsolas' schedule without notice, knowing that this threatened her ability to keep her job.[36]  Shortly after this lawsuit was filed, Babbo's executive chef, Frank Langello began instructing employees not

---

Decl. ¶¶ 3-4); Ex. EE (Forbes Decl. ¶¶ 3-4); Ex. FF (Jansen Decl. ¶ 3); Ex. GG (Patrick Decl. ¶¶ 3-5); Ex. HH (Ranaudo Decl. ¶ 3); Ex. II (Toro Decl. ¶ 3). -

[29]  *Id.*

[30]  *See* Bien Decl. Ex. W (Employee Manual for Casa Mono & Bar Jamon).

[31]  Bien Decl. Ex. KK (*Bastianich: We Will Not Be Shaken Down  By Our Workers*, Eater.com, July 28, 2010, http://ny.eater.com/archives/2010/07/bastianich_we_will_not_ be_shaken_down_by_former_workers.php (last visited Oct. 11, 2010)).

[32]  Bien Decl. Ex. AA (Capsolas Decl. ¶ 8).

[33]  Bien Decl. Ex. FF (Jansen Decl. ¶ 11);

[34]  Bien Decl. Ex. II (Toro Decl. ¶ 11).    .

[35]  Bien Decl. Ex. AA (Capsolas Decl. ¶¶ 9-10, Ex. B (photograph of locker)).

[36]  *Id.* ¶ 9.

to socialize with Alvarado.[37]  Langello also prohibited Alvarado from eating a post-shift meal

that all other employees were allowed to eat.  When Alvarado complained about this to Babbo's

general manager, Langello declared that there would no longer be a post-shift meal, and that it

was Alvarado's fault that the meal was discontinued.[38]  Langello also often follows Alvarado

around the restaurant in an intimidating manner and calls him "useless."[39]

<strong>ARGUMENT</strong>

**I.      Court-Authorized Notice Is Fair, Efficient, and Advances Public Policy Aims.**

      **A.      Prompt Notice Would Serve the Goals of the FLSA.**

     The FLSA authorizes private parties to sue in federal court to recover damages.  29

U.S.C. §§ 201 *et seq.*  In addition to bringing individual suits, aggrieved employees may bring a

collective action "on behalf of themselves and other employees similarly situated."  29 U.S.C. §

216(b).  Allowing FLSA suits to proceed as collective actions furthers the goal of judicial

economy.  Collective actions enable the "efficient resolution in one proceeding of common

issues of law and fact. . ."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  The

alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily

and risk inconsistent judgments on claims arising from the same events and brought under the

same laws.[40]

     To serve the "broad remedial purpose" of the FLSA, courts have the authority to notify

---

[37]  Bien Decl. Ex. X (Alvarado Decl. ¶ 7).

[38]  *Id.* ¶ 8.

[39]  *Id.* ¶ 9.

[40]  Collective actions also provide plaintiffs the opportunity to "lower individual costs to
vindicate rights by the pooling resources."  *Hoffman-La Roche*, 493 U.S. at 170.  Employees
earning the minimum hourly wage – and, in this case, considerably *less* than the minimum
hourly wage – are unlikely to have the resources to pursue their lost wages on an individual
basis.  If their claims are not pooled in a collective action, many claims will go unheard and
Defendants' unlawful practices unchallenged.

potential opt-in plaintiffs of their chance to join an existing action early in the proceedings. *Hoffman-La Roche*, 493 U.S. at 169; *Braunstein v. E. Photo Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998). This is the preferred method for managing collective actions because "employees must receive timely notice in order for the benefits of the collective action to accrue." *Cruz v. Hook-SupeRX, L.L.C.*, No. 09 Civ. 7717 (PAC), 2010 WL 3069558, at *1 (S.D.N.Y. Aug. 5, 2010). Here, time is of the essence, because employees' claims are diminished or extinguished every day. Because the statute of limitations does not toll for a potential plaintiff until she opts in to the action, early notice is essential. *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162 n.12 (N.D.N.Y. 2008). The Second Circuit "encourages the sending of notice to 'similarly situated' individuals." *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319 (PAC), 2006 WL 1084556, at *1 (S.D.N.Y. Apr. 24, 2006) (quoting *Braunstein*, 600 F.2d at 336).

### B. Notice Is Crucial, Given Defendants' Intimidation.

Timely notice is especially important where, as here, the employer's conduct may have discouraged employees from joining the lawsuit. Courts regularly recognize "the risk of bias and coercion" inherent in the employer/employee relationship. *Vaughan v. Mortgage Source LLC*, No. 08 Civ. 4737, 2010 WL 1528521, at *7 (E.D.N.Y. April 14, 2010). *See also Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002(DLC)*, 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008). Notice will accurately inform Batali Group workers about the case and provide Plaintiffs with access to Batali Group employees equal to that of Defendants. Without Court-supervised notice, captive current employees will remain vulnerable and misinformed.

**II.    Plaintiffs Exceed Their Low Burden Under 29 U.S.C. § 216(b).**

Courts in the Second Circuit employ a two-step approach in adjudicating collective actions.  At the initial "notice stage," the court determines, on the basis of pleadings and affidavits, whether to notify potential opt-in plaintiffs that the case is pending.  *Torres v. Gristede's Oper. Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006).  At this stage, Plaintiffs must merely establish the existence of other employees who were "similarly situated" to them.  *Realite,* 7 F. Supp. 2d at 306.

Other employees are "similarly situated" if they were subjected to the same policy or practice being challenged by plaintiffs in the litigation.  *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003).  *See Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (authorizing notice where plaintiffs "establish[ed] that they were all required to participate in a tip pool that included employees who were not the type of employee that customarily and regularly receives tips [and] . . . that at least for some period of their employment they were paid less than the federal minimum wage because Defendants took advantage of the tip credit").  Plaintiffs do not have to show "an actual FLSA violation" at this stage, but rather only that "a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs."  *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 678 F. Supp. 2d 89, 92 (E.D.N.Y. 2010).

At the initial stage, the conditional certification motion "warrants lenient review."  *Cruz*, 2010 WL 3069558, at *2.  Plaintiffs need make only a "modest factual showing" that they and other employees were victims of a common policy.  *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  Courts apply "'a fairly lenient standard' and . . . typically grant[] 'conditional certification.'"  *Torres*, 2006 WL 2819730, at *7.  *See also Diaz v. Scores Holding*

*Co.*, No. 07 Civ. 8718 (RMB), 2008 WL 7863502, (S.D.N.Y. May 9, 2008).  "In cases in which conditional certification has been denied, the plaintiffs typically have failed to make any factual showing beyond conclusory statements in the pleadings."  *Greene v. C.B. Holding Corp.*, 1:10-cv-01094, 2010 WL 3516566, at \*4 (E.D.N.Y. Aug. 12, 2010).

At this initial stage a "weighing of the merits is absolutely inappropriate."  *Shajan v. Barolo Ltd.*, No. 10 Civ. 1385 (CM), 2010 WL 2218095, at \*1 (S.D.N.Y. June 2, 2010).  *See also Krueger v. N.Y. Tel. Co.*, Nos. 93 Civ. 0178-79, 1993 WL 276058 at \*2 (S.D.N.Y. July 21, 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage . . . may enable more efficient resolution of the underlying issues . . .").

"Extensive discovery" is not necessary at the initial stage.  *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007).  In lieu of discovery, courts rely on the allegations set forth in the complaint and in employee declarations.  *Cruz*, 2010 WL 3069558, at \*1 ("Courts look at pleadings and affidavits in making th[e] determination [that plaintiffs and potential plaintiffs are similarly situated]").  *See also Shajan*, 2010 WL 2218095, at \*1 (authorizing notice to restaurant workers based on pleadings and affidavits because "nothing more is needed at this stage"); *Delaney*, 261 F.R.D. at 59  (authorizing notice to restaurant workers based on plaintiffs' declarations and deferring "issues of fact" raised by defendants' declaration to a later stage); *Gjurovich*, 282 F. Supp. 2d at 104-05 (plaintiff met his "minimal" burden for court-authorized notice based on pleadings and his declaration).

At the second stage, after full discovery, typically on a motion for decertification, courts make a more searching factual determination whether members of the collective are, in fact, similarly situated.  *Torres*, 2006 WL 2819730, at \*7.

### A.      Plaintiffs and Potential Plaintiffs Are Similarly Situated with Respect to Their FLSA Claims.

Here, Plaintiffs easily meet their low, first stage burden.   Plaintiffs make a strong

preliminary showing, through their well-pled complaint, the declarations of Plaintiffs and Opt-in

plaintiffs, the declaration of a former sommelier, and Defendants' own documents,[41] that

Defendants subjected them and their co-workers to the same compensation policies and that

these policies violate the FLSA.  Each violation was the result of a company-wide policy or

practice that affected all Plaintiffs and Potential Plaintiffs in a similar way.  Specifically,

Defendants paid Plaintiffs and their co-workers less than the full FLSA minimum wage.[42]

---

[41]  Courts routinely authorize notice on thinner records.  *See, e.g., Delaney*, 261 F.R.D. 55, 58 (conditionally certifying class based on testimony of nine opt-ins); *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 385580, at *5 (N.D. Ohio Feb. 13, 2009) (three declarations and training manual); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (one declaration from "lone plaintiff"); *Pefanis*, 2008 WL 4546526, at *1  (conditionally certifying class despite the fact that no one had consented to join the suit other than the named plaintiff); *Cuzco v. Orion Builders, Inc.,* 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) (same); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2007) (certifying class based on testimony from nine declarations); *Williams v. Le Chaperon Rouge*, No. 1:07-CV-829, 2007 WL 2344738, at *3 (N.D. Ohio Aug. 14, 2007) (one affidavit and an employee handbook); *Laroque v. Domino's Pizza*, 557 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2008) (four affidavits); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (three opt-ins); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54-55 (S.D.N.Y. 2005) (one declaration and evidence from defendant's affidavits); *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *1, *3 (S.D. Fla. Jan. 3, 2005) (four affidavits and "approximately ten (10) other[s] . . . who have indicated a willingness to become opt-in plaintiffs"); *Richards v. Computer Science Corp.*, No. 3:03CV630(DJS), 2004 WL 3517039, at *4 (D. Conn. Sept. 28, 2004) (testimony of plaintiff, two affidavits, and company job description); *Legrand v. Educ. Mgmt. Corp.*, No. 03-9798 (HB) (HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs); *Carter v. Indianapolis Power & Light Co.*, No. IP 1:02-CV-01812-SEB-VSS, 2003 WL 23142183, at *1, *3-4 *3 (S.D. Ind. Dec. 23, 2003) (three affidavits and one opt-in); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787(HB), 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002) (one affidavit); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits);  *Realite*, 7 F. Supp. 2d at 305 (ten affidavits); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 376 (N.D.N.Y. 1995) (two affidavits in ADEA case).

[42]  Bien Decl. Ex. X (Alvarado Decl. ¶ 2); Ex. Y (Barron Decl. ¶ 2); Ex. Z (Canosa Decl. ¶ 2); Ex. AA (Capsolas Decl. ¶ 2); Ex. BB (Caro Decl. ¶ 2); Ex. CC (Cutaiar Decl. ¶ 2); Ex. DD (Ell

Defendants were not legally entitled to do this for two independent reasons: (1) they retained a portion of their employees' tips; and (2) they failed to inform Plaintiffs and their co-workers of the tip credit provisions of the FLSA.[43]

### B.   Defendants Failed to Pay Any Plaintiff or Potential Plaintiff the Required Minimum Wage.

Defendants violated the FLSA's minimum wage provisions the in same way with respect to all Plaintiffs and potential opt-in plaintiffs.  The FLSA requires employers to pay their employees at least the statutory minimum wage.  29 U.S.C. § 206(a).  Under certain circumstances, employers may pay "tipped employees"[44] less than the minimum wage by taking a "tip credit" pursuant to 29 U.S.C. § 203(m) ("§ 203(m)").  Under § 203(m), to avail itself of the tip credit, a restaurant must meet two criteria: (1) tipped employees must be "informed by the employer of the provisions of [§203(m)]"; and (2) the employer must allow "all tips received by such employee [to be] retained by the employee."  29 U.S.C. § 203(m); *Nicholson v. Twelfth Street Corp.*, No. 09 Civ. 1984 (HB), 2010 WL 1780957, at *2 (S.D.N.Y. May 4, 2010) ("To avail itself of the tip credit, an employer must notify employees of the law regarding minimum wages and of the employer's intention to take the tip credit, and must permit employees to retain all tips that they receive.").  These two requirements are "strictly construed."  *Chung v. New*

---

Decl. ¶ 2); Ex. EE (Forbes Decl. ¶ 2); Ex. FF (Jansen Decl. ¶ 2); Ex. GG (Patrick Decl. ¶ 2); Ex. HH (Ranaudo Decl. ¶ 2); Ex. II (Toro Decl. ¶ 2).

[43]   Bien Decl. Ex. X (Alvarado Decl. ¶¶ 3-6); Ex. Y (Barron Decl. ¶¶ 3-7); Ex. Z (Canosa Decl. ¶¶ 3-8); Ex. AA (Capsolas Decl. ¶¶ 3-6); Ex. BB (Caro Decl. ¶¶ 3-7); Ex. CC (Cutaiar Decl. ¶¶ 3-7); Ex. DD (Ell Decl. ¶¶ 3-7 ); Ex. EE (Forbes Decl. ¶¶ 3-7); Ex. FF (Jansen Decl. ¶¶ 3-7); Ex. GG (Patrick Decl. ¶¶ 3-8); Ex. HH (Ranaudo Decl. ¶¶ 3-7); Ex. II (Toro Decl. ¶¶ 3-7).

[44]   A "tipped employee" is an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  29 U.S.C. § 203(t).

*Silver Palace Rest.,* 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).  Here, Defendants fail to meet

them with respect to all Plaintiffs and their co-workers.

### 1.    Defendants Did Not Inform Plaintiffs of the Provisions of § 203(m).

Defendants did not inform their tipped workers of the provisions of § 203(m).  "If the

employer cannot show that it has informed employees that tips are being credited against their

wages, then no tip credit can be taken and the employer is liable for the full minimum wage."

*Cao v. Chandara Corp.*, No. 00 Civ. 8057(SAS), 2001 WL 34366628, at *5 (S.D.N.Y. July 25,

2001) (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)) (internal quotation

marks omitted); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254 (S.D.N.Y. 2008) (the

employer must "first notify the employees of the requirements of the law regarding minimum

wages and of the employer's intention to take the tip credit").  One way an employer can comply

with § 203(m) is "by, for example, providing employees with a copy of § 203(m) and informing

them that their tips will be used as a credit against the minimum wage." *Chan v. Sung Yue Tung

Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *18 (S.D.N.Y. Feb. 1, 2007).  Section

203(m) also "requires that the employer . . . *explain* the tip provision of the Act to the employee

and that all tips received by such employee must be retained by the employee."  S. Rep. No. 93-

690, at 43 (1974) (emphasis added).

Here, Defendants treated all Plaintiffs and potential Plaintiffs the same with respect to

this requirement.  Defendants' uniform practice is *not to inform workers* of the provisions of 29

U.S.C. § 203(m).  Defendants had no policies that required them to explain to workers the

provisions of § 203(m).  Defendants' written employee handbook does not explain § 203(m) and

Defendants never told Plaintiffs about the provisions of § 203(m).[45]  Courts have granted motions

like this one based solely on an employer's uniform failure to meet this requirement.  *See, e.g.*,

*Dominguez v. Don Pedro Rest.*, 2:06 Civ. 241, 2007 WL 271567, at *3 (N.D. Ind. January 25,

2007); *Zhao v. Benihana, Inc.*, No. 01 Civ. 1297(KMW), 2001 WL 845000, at *1-2 (S.D.N.Y.

May 7, 2001).  For this reason alone, Plaintiffs have shown that they and potential Plaintiffs are

similarly situated, as required by 29 U.S.C. § 216(b).

### 2.   Defendants Retained a Portion of Employees' Tips for Themselves.

Section 216(b)'s similarly situated requirement is also satisfied here because Defendants

uniformly failed to allow their tipped employees to retain all of the tips they received.  An

employer may not claim a tip credit if it withholds a portion of the tips for itself.  *See Nicholson*,

2010 WL 1780957, at *2 (finding Defendants liable for failure to pay minimum wage based on

withholding of ten percent of credit card tips); *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ

6048(GEL), 2006 WL 851749, at *11 (S.D.N.Y. March 30, 2006) (§ 203(m) "clearly prohibits

employers from confiscating *any* portion of employees' tips if the employers rely on the tip

credit to satisfy the minimum wage"); *Vance v. Ala Carte Entertainment, Inc.*, No. 01 Civ. 5817,

2003 WL 24311811, at *1 (N.D. Ill. Apr. 14, 2003) (restaurants liable for FLSA tip credit

violations because they withheld 5% of all tips).

Here, Defendants' retention of tips reduced all potential Plaintiffs' earnings and created a

group of similarly situated employees – they all had to share their tips with their employers.

Courts frequently certify collective actions where individuals allege that their employers were

---

[45]  Bien Decl. Ex. W (Casa Mono and Bar Jamon Employee Manual); Bien Decl. Ex. X
(Alvarado Decl. ¶ 3); Ex. Y (Barron Decl. ¶ 3); Ex. Z (Canosa Decl. ¶¶ 3-5); Ex. AA (Capsolas
Decl. ¶ 3); Ex. BB (Caro Decl. ¶ 3); Ex. CC (Cutaiar Decl. ¶ 3); Ex. DD (Ell Decl. ¶¶ 3-4); Ex.
EE (Forbes Decl. ¶¶ 3-4); Ex. FF (Jansen Decl. ¶ 3); Ex. GG (Patrick Decl. ¶¶ 3-5); Ex. HH
(Ranaudo Decl. ¶ 3); Ex. II (Toro Decl. ¶ 3).

not entitled to the federal credit because the employers required employees to share their tips with non-tip eligible individuals or entities.  *See, e.g.*, *Greene*, 2010 WL 3516566, at *1-2, 5; *Shajan*, 2010 WL 2218095, at *1; *Garcia*, 678 F. Supp. 2d at 94; *Alonso v. Uncle Jack's Steakhouse*, 648 F. Supp. 2d 484, 487 (S.D.N.Y. 2009); *Delaney*, 261 F.R.D. at 58; *Pefanis*, 2008 WL 4546526, at *1; *Diaz* , 2008 WL 7863502, at *4-5; *Dumitrescu v. Mr. Chow Enters.*, No. 07 Civ. 3601 (PKL), 2008 WL 2600667, at *5 (S.D.N.Y. June 30, 2008); *Bernal v. Vankar Enter., Inc.*, No. SA-07-CA-695-XR, 2008 WL 791963, at *4 (W.D. Tex. March 24, 2008); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321-22; *Khalil v. The Original Homestead Rest. Inc.*, No. 07 Civ. 695(RJH), 2007 WL 7142139, at *1 (S.D.N.Y. Aug. 9, 2007); *Dominguez*, 2007 WL 271567, at *3; *Sipas*, 2006 WL 1084556, at *2; *Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006); *Zhao*, 2001 WL 845000, at *1; *Realite*, 7 F. Supp. 2d at 307 & n.2.

## III.    The Court Should Approve Plaintiffs' Proposed Notice.

Plaintiffs' proposed notice is "timely, accurate, and informative," *Hoffman-La Roche,* 493 U.S. at 166, and the Court should approve it.[46]  It is based on the model employment discrimination "plain-language notice" suggested by the Federal Judicial Center.[47]

Plaintiffs' Proposed Notice also contains a conspicuous, unambiguous statement that Defendants are prohibited by law from retaliating against any worker that opts in to the lawsuit. The language in Plaintiffs' Proposed Notice may help alleviate the understandable fear current employees have of losing their jobs in this tough economic climate, a fear exacerbated by Defendants' intimidating tactics.  Explaining to workers the FLSA's anti-retaliation protections is consistent with the purpose of court-authorized notice:  to apprise individuals of their rights

---

[46]  Bien Decl. Ex. LL (Plaintiffs' Proposed Notice).
[47]  Bien Decl. Ex. MM (Federal Judicial Center Model Notice).

and enable them to join the case.  *See Pefanis*, 2008 WL 4546526, at *1 (noting that "current employees may hesitate to join a lawsuit against their employer for many reasons, such as fear of retaliation" and authorizing notice "given the 'broad remedial purpose of the FLSA, which should be given a liberal construction'").

## IV.    The Court Should Require Defendants to Post the Notice in All of Their New York Restaurants.

In addition to the notice that should be mailed to all potential Plaintiffs, Defendants should be required to post the Notice in all Batali Group restaurants in a location clearly visible to potential opt-in Plaintiffs.  This is necessary to counteract Defendant Bastianich's misleading statements about this lawsuit and to reassure current employees that they will not be subject to the same retaliation and intimidation that some Plaintiffs have already experienced.  Courts often order corrective notice in class and collective actions where a defendant has engaged in misleading or improper communications with putative class or collective members.  *See, e.g.*, *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002(DLC), 2010 WL 3564426, at *2 (S.D.N.Y. Sept. 7, 2010) (describing how defendant was ordered to post "curative" notice in the workplace where defendant's communications with then-current employees may have influenced employees to opt out of Rule 23 class action); *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 669-670 (E.D. Tex. 2003) (ordering corrective notice where defendant's communications with potential opt-in plaintiffs were designed to prevent potential opt-ins from joining FLSA action).  Such corrective actions are particularly appropriate where, as here, there is a pre-existing employment relationship with its inherent "risk of bias and coercion."  *Vaughan*, 2010 WL 1528521, at *7. *See also Belt*, 299 F. Supp. 2d at 667 (*citing Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)).

## V.     Discovery of Names, Addresses, Telephone Numbers, and Social Security Numbers Is Proper and Necessary Under § 216(b).

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members.  *See, e.g.*, *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006); *Fasanelli*, 516 F. Supp. 2d at 323-24; *Cuzco*, 477 F. Supp. 2d at 637; *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005).  "Courts within this Circuit routinely grant plaintiffs' motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada v. Linens 'n Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007).

Plaintiffs request that, in addition to entering an order granting conditional certification and approving Plaintiffs' proposed notice, the Court order Defendants to produce within ten days of its Order a computer-readable list of all non-managerial, tipped employees who were employed at any Batali Group restaurant in the state of New York at any point in the three years prior to the entry of the Order with the following information: name, last known mailing address, alternate address (if any), all known telephone numbers, Social Security number, and dates of employment by restaurant.

Plaintiffs seek the Social Security numbers of Covered Employees so that Plaintiffs' counsel can perform a skip trace for all notices returned as undeliverable because of a change of address.  Based on Plaintiffs' counsel's experience, a large percentage of consent forms are typically returned as undeliverable, and the best way to locate these employees is to perform a search by Social Security number.  Bien Decl. Ex. NN (Declaration of Loree Kovach ¶¶ 6-8). *See Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2010 WL 3023037, at *14 (S.D.N.Y. July 26,

2010) (granting Plaintiffs' request for disclosure of class members' Social Security numbers).

Plaintiffs are willing to execute a stipulation of confidentiality regarding the numbers. *See*

*Patton*, 364 F. Supp. 2d at 268 (requiring defendant to produce Social Security numbers of

putative collective members subject to entry of a confidentiality agreement).

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully ask this Court to GRANT their

Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of

the FLSA in its entirety.

Dated: New York, New York
      October 14, 2010

Respectfully submitted,
**OUTTEN & GOLDEN LLP**
By:

  /s/ Justin M. Swartz
Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Sonia R. Lin
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM LLP**
D. Maimon Kirschenbaum
Denise A. Schulman
Charles E. Joseph
757 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 688-5640
Facsimile: (212) 688-2548

**Attorneys for Plaintiffs and
the Putative Class and Collective**

19