UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE CAPSOLAS, HERNAN RICARDO ALVARADO, JEFFREY CUTAIAR, NICOLE MEDVITZ, PAUL TORO, DANIEL JANSON, ROGER CARO, CHRIS ELL, CHRIS FORBES, JESSE PATRICK and DIANA DIETRICH, on behalf of themselves and other similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>PASTA RESOURCES INC., BABBO LLC d/b/a BABBO RISTORANTE ENOTECA, PANE SARDO LLC d/b/a OTTO ENOTECA PIZZERIA, EL MONO LLC d/b/a CASA MONO and BAR JAMON, LA LOGGIA LLC d/b/a TARRY LODGE, MARIO BATALI and JOSEPH BASTIANICH,<br><br>Defendants. | Case No. 10-cv-5595 (RJH) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA**

---

LITTLER MENDELSON, P.C.
A. Michael Weber (mweber@littler.com)
Michael P. Pappas (mpappas@littler.com)
Sara Danielle Sheinkin (ssheinkin@littler.com)
900 Third Avenue
New York, New York 10022.3298
212.583.9600

Attorneys for Defendants

TABLE OF CONTENTS

PAGE

Table of Authorities ....................................................................................................... iii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     PLAINTIFFS CANNOT CIRCUMVENT THE REQUIREMENTS OF
STANDING ............................................................................................... 3

III.    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A
SINGLE CLASS, INCLUDING EMPLOYEES OF NON-DEFENDANT
ENTITIES, SHOULD BE DENIED ............................................................ 5

      A.    It is Plaintiffs' Burden to Establish that Conditional Certification is
Appropriate .................................................................................... 5

      B.    Plaintiffs Have Not Established the Existence of a Uniform Policy Utilized
by the Restaurant-Defendants ......................................................... 7

      C.    Plaintiffs' Allegations of a Centrally Controlled, Uniform Operation Do
Not Satisfy the Conditional Certification Requirements ................... 10

             1.    Plaintiffs Must Still Establish the Existence of a Common Plan ............. 10

             2.    Plaintiffs' Allegations Fail to Establish that the Restaurant-
Defendants are Joint Employers ......................................... 11

      D.    Conditional Certification of a Class Including Employees of the Non-
Defendant Entities Would be Improper ............................................ 12

             1.    There is no Evidence that the Non-Defendant Entities' Employees
are Similarly Situated to the Named Plaintiffs ....................... 12

             2.    None of the Named Plaintiffs are Similarly Situated to Employees
of the Non-Defendant Entities ............................................ 15

IV.    REVISIONS TO PLAINTIFFS' NOTICE ARE REQUIRED ....................... 15

      A.    The Court Should Conditionally Certify Subclasses .......................... 16

      B.    It is Premature to Require Defendants to Produce Social Security Numbers ...... 16

      C.    It is Unnecessary for Defendants to Produce Telephone Numbers .................... 17

      D.    Defendants Should Not be Required to Post the Notice .................... 18

i

TABLE OF CONTENTS
(CONTINUED)

PAGE

V.     EQUITABLE TOLLING IS INAPPROPRIATE ........................................................... 19

VI.    CONCLUSION............................................................................................................ 22

TABLE OF AUTHORITIES

PAGE

## Cases

*Akerman v. Oryx Comms., Inc.*, 609 F. Supp. 363 (S.D.N.Y. 1984)..........................................3, 4

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009)...................16, 17

*Arevalo v. D.J.'s Underground, Inc.*, 2010 U.S. Dist. LEXIS 109193
(D. Md. Oct. 13, 2010)....................................................................................................18

*Asbestos Sch. Litig.*, 1987 U.S. Dist. LEXIS 7033 (E.D. Pa. Aug. 3, 1987)....................................12

*Belcher v. Shoney's, Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996) ................................................14

*Bravo v. Eastpoint Int'l, Inc.*, 2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. Mar. 30, 2001) .............11

*Brooks v. A Rainaldi Plumbing, Inc.*, 2006 U.S. Dist. LEXIS 89417
(M.D. Fla. Dec. 8, 2006)..............................................................................................7, 8

*Brown v. Sibley*, 650 F.2d 760 (5th Cir. 1981)..............................................................................3

*Campbell v. PriceWaterhouse Coopers, LLP*, 2008 U.S. Dist. LEXIS 44795
(E.D. Cal. June 5, 2008)................................................................................................18

*Castro v. Spice Place, Inc.*, 2009 U.S. Dist. LEXIS 7678 (S.D.N.Y. Jan. 30, 2009).........7, 10, 12

*Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007)...............11

*Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) ..........17

*Davis v. Lenox Hill Hospital*, 2004 U.S. Dist. LEXIS 17283 (S.D.N.Y. Sept. 1, 2004).............15

*Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009)...............................................17

*Hageman v. Accenture LLP*, 2010 U.S. Dist. LEXIS 99374 (D. Minn. Sept. 21, 2010) ...........3, 4

*Hamelin v. Faxton-St. Luke's Healthcare*, 2009 U.S. Dist. LEXIS 9793
(N.D.N.Y. Jan. 26, 2009)........................................................................................6, 14, 15

*Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999) ........................................6, 13

*Hintergerger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944
(W.D.N.Y. Oct. 21, 2009)..........................................................................................18, 20

*Hukill v. Auto Care, Inc.*, 192 F.3d 437 (4th Cir. 1999) ...............................................................11

*Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006)........................11

*Lance v. Coffman*, 549 U.S. 437 (2007) .......................................................................................3

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) .............................9, 14

*Lin v. Benihana Nat'l Corp.*, 2010 U.S. Dist. LEXIS 132871
(S.D.N.Y. Nov. 9, 2010) .......................................................................................6, 7, 17

*Lucas v. BMS Enterp, Inc.*, 2010 U.S. Dist. LEXIS 66050 (N.D. Tex. July 1, 2010)...............3, 4

*Maddock v. KB Homes, Inc.*, 2007 U.S. Dist. LEXIS 95763 (C.D. Cal. Oct. 19, 2007).............12

*Malena v. Victoria's Secret Direct, LLC*, 2010 U.S. Dist. LEXIS 121320
(S.D.N.Y. Nov. 16, 2010) ............................................................................................16

*Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006) ...............7, 13

*Ritzer v. UBS Fin. Servs.*, 2008 U.S. Dist. LEXIS 71635 (D.N.J. Sept. 22, 2008).....................18

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Shajan v. Barolo, Ltd.*, 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2, 2010)........................ 18

*Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016
   (S.D. Cal. Apr. 22, 2008) ........................................................................................... 14

*Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941 (M.D. Fla. 1994) ........................................... 10

*Wallace v. Kato*, 549 U.S. 384 (2007) ........................................................................................ 20

*Zerilli-Edelglass v. NYC Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) .......................................... 20

**Rules**

12 NYCRR 146-2.14 ..................................................................................................................... 8

29 U.S.C. § 216(b) ........................................................................................................................ 6

## I.     PRELIMINARY STATEMENT

There are ten named plaintiffs in this action.[1]  Plaintiffs Stephanie Capsolas and Hernan Alvarado are employed by defendant Babbo LLC ("Babbo).  Plaintiffs Paul Toro, Daniel Jansen and Roger Caro were employed by defendant La Loggia LLC ("Tarry Lodge").  Plaintiffs Jeffrey Cutaiar and Nicole Medvitz were employed by defendant Pane Sardo LLC ("Otto").  Plaintiffs Chris Ell, Chris Forbes and Jesse Patrick were employed by El Mono LLC ("Casa Mono").  In addition to these four restaurant-defendants, Plaintiffs assert claims against Pasta Resources Inc., an administrative support company utilized by the restaurant-defendants, and two of the restaurants' partial owners, Mario Batali and Joseph Bastianich.  Plaintiffs now seek conditional certification of their FLSA claim, and authorization to send a single notice of their action to the restaurant-defendants' current and former tipped employees, advising them of their right to opt-in to Plaintiffs' federal lawsuit.  In addition, Plaintiffs seek to send this same notice to current and former tipped employees of Il Posto LLC ("Del Posto"), Pulpo LLC ("Esca") and Red Claim LLC ("Lupa"), although these entities are **not** named as defendants in this action and none of the Plaintiffs were employed by these non-defendant entities.

For purposes of this motion only, Defendants do not dispute that the plaintiffs who worked for each individual restaurant-defendant have sufficiently alleged the existence of a common policy or plan in existence at *that* particular restaurant to warrant the sending of notice to *that* particular restaurant's employees.  For example, Babbo will agree that plaintiffs Alvardo and Capsolas, whom Babbo employed, may send notice of this collective action to similarly situated employees of Babbo.  Similarly, Tarry Lodge will agree that plaintiffs Paul Toro, Roger Caro and Daniel Jansen, whom Tarry Lodge employed, may send a separate notice of this

---

[1] Although still named in the caption, Diana Dietrich has voluntarily dismissed her claims in this action. (Notice of Voluntary Dismissal, Docket No. 30.)

collective action to similarly situated employees of Tarry Lodge. Otto and Casa Mono will also each agree that the plaintiffs who worked for each respective entity can send notice of their claims to each entity's respective similarly situated employees.

Defendants do dispute, however, that Plaintiffs have adequately established the existence of an overarching common policy or plan maintained by all Defendants in violation of the FLSA, sufficient to warrant sending a single notice to all tipped employees who worked for any of the restaurant-defendants. Each of the named plaintiffs only worked for a single restaurant. No plaintiff purports to have personal knowledge concerning the policies or plans at any restaurant other than the one restaurant for which he or she worked. Nor does any plaintiff have knowledge of any connection between the policies of the multiple restaurant-defendants. Accordingly, Defendants submit that the Court should conditionally certify separate subclasses made up of the tipped employees of each restaurant-defendant, and that a separate notice of pendency should be prepared for each subclass.

Defendants also adamantly oppose Plaintiffs' attempt to send notice of this collective action to employees of Del Posto, Lupa and Esca, entities that are not named as defendants in this lawsuit and where none of the named plaintiffs worked. Plaintiffs' brief provides no support for their suggestion that a court can certify a collective action against independent corporate entities, which are not defendants in an action, did not employ any of the named plaintiffs, and have no opportunity to respond to the claims against them. In fact, Plaintiffs' proposal blatantly ignores the requirements of due process and standing. Plaintiffs must not be permitted to use the collective action device to circumvent these constitutional requirements and assert claims against entities that did not employ them, have caused them no harm, and are not even named as defendants in this action.

2

## II.   PLAINTIFFS CANNOT CIRCUMVENT THE REQUIREMENTS OF STANDING

In this action, Plaintiffs seek to send notice of their collective action to the employees of three separate corporate entities that are not named as defendants (Del Posto, Lupa and Esca). One might question why Plaintiffs did not simply name these entities as defendants along with the four other restaurant-defendants they have sued.  Upon reflection, the answer is simple. Plaintiffs lack standing to assert claims against the non-defendant entities.  By not naming the non-defendant entities as defendants, but seeking still to send notice of Plaintiffs' claims to their employees, Plaintiffs are attempting to circumvent the requirements of standing.

Standing is a constitutional prerequisite to maintaining a lawsuit.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  It is Plaintiffs' burden to establish standing.  *Lucas v. BMS Enterp, Inc.*, 2010 U.S. Dist. LEXIS 66050, at *5 n.3 (N.D. Tex. July 1, 2010).  "To satisfy the case-or-controversy requirement of Article III of the Constitution, plaintiffs must show that they have suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision."  *Id.* at *4-5 (internal quotations omitted).  The "injury" must affect plaintiffs in a personal and individual way.  *Id.* at *5.

The requirements for standing are not lessened for plaintiffs in a class or collective action.  *Id.* at *6, 8 n.4; *Hageman v. Accenture LLP*, 2010 U.S. Dist. LEXIS 99374, at *9 (D. Minn. Sept. 21, 2010).  "Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue."  *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981).  In other words, Plaintiffs may not use the procedural device of a class or collective action to bootstrap themselves into standing they lack.  *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004).  Each plaintiff must have standing to sue each defendant. *Akerman v. Oryx Comms., Inc.*, 609 F. Supp. 363, 376 (S.D.N.Y. 1984); *see*

*also Hageman*, 2010 U.S. Dist. LEXIS 99374, at *9 (quoting *Lucas*, 2010 U.S. Dist. LEXIS 66050, at *5) ("[A] named plaintiff in a collective action has adequately pleaded standing against a particular defendant *only if* the plaintiff has alleged an injury that the defendant caused to him.")  "Only then is a plaintiff in a position to represent others having similar claims against those same defendants." *Akerman*, 609 F. Supp. at 377 (internal quotations omitted).

FLSA liability is predicated upon an employee-employer relationship.  *Lucas*, 2010 U.S. Dist. LEXIS 66050, at *15.  Accordingly, a mere corporate relationship between a defendant and another corporation responsible for an injury does not establish standing.  *Id.* at *10 n.6.  Nor is alleging that defendants may be part of a common enterprise with plaintiffs' employer sufficient. *Id.* (stating that the FLSA concept of enterprise does not abrogate the need for the plaintiff to show that he suffered injury at the hands of each individual defendant, even if the defendants are related corporations).  Because an employment relationship is required for standing, Plaintiffs cannot maintain an FLSA collective action on behalf of potential opt-in plaintiffs against defendants whom no named plaintiff can show was his employer.

In *Lucas*, plaintiffs brought a nationwide FLSA collective action against BMS, the Blackman Mooring defendants, and eight other allegedly related (separately incorporated) entities, alleging that the entities maintained a performance policy that forced plaintiffs not to report time that they were on call for their employer, thereby depriving them of overtime pay. 2010 U.S. Dist. LEXIS 66050, at *2.  The court analyzed whether plaintiffs had standing to sue the Blackmon Mooring defendants.  In support of their claim, plaintiffs alleged that they and the putative class were employees of defendants and that they performed activities on behalf of defendants.  *Id.* at *11-12.  Plaintiffs also alleged a common scheme meant to deprive them of overtime pay.  *Id.* at *12.  "In sum, plaintiffs allege[d] standing to sue the Blackmon Mooring defendants on the basis that members of the putative class were employed by those defendants,

and accordingly suffered the same injury as did plaintiffs." *Id.* at *13.  But showing that a corporate entity may be some class member's employer was insufficient for the named plaintiffs to establish standing.  *Id.* at *14 n.7.  Accordingly, the Blackmon Mooring defendants were dismissed from the case based on a lack of standing.  *Id.* at *13-15.

Here, there are ten named plaintiffs in this action, each of whom worked for one – and only one – of the named restaurant-defendants.[2]  Not one of the named plaintiffs claims to have performed work at Del Posto, Lupa or Esca.  Thus, not a single named plaintiff suffered injury traceable to the actions of Del Posto, Lupa or Esca.  Accordingly, had Plaintiffs named any of these entities as a defendant, that claim would be subject to dismissal for lack of standing.

Plaintiffs must not be permitted to circumvent the constitutional requirement of standing by failing to name the non-defendant entities as defendants and then arguing that a notice of pendency should be sent to their employees nonetheless.

## III.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A SINGLE CLASS, INCLUDING EMPLOYEES OF NON-DEFENDANT ENTITIES, SHOULD BE DENIED

### A.   It is Plaintiffs' Burden to Establish that Conditional Certification is Appropriate

Plaintiffs seek conditional certification of a collective action pursuant to the FLSA. Section 216(b) of the FLSA provides that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

---

[2] Hernan Alvarado and Stephanie Capsolas worked for defendant Babbo.  (Alvarado Dec. ¶ 1; Capsolas Dec. ¶ 1.)  Paul Toro, Roger Caro and Daniel Jansen worked for defendant Tarry Lodge.  (Toro Dec. ¶ 1; Caro Dec. ¶ 1; Jansen Dec. ¶ 1.)  Jeffrey Cutaiar and Nicole Medvitz worked for defendant Otto.  (Cutaiar Dec. ¶ 1; Compl. ¶ 29.)  Chris Ell, Chris Forbes and Jesse Patrick worked for defendant Casa Mono.  (Ell Dec. ¶ 1; Forbes Dec. ¶ 1; Patrick Dec. ¶ 1.)  These, and all other declarations referenced herein, except those that are submitted herewith, were filed by Plaintiffs in support of their Motion for Conditional Certification.

29 U.S.C. § 216(b).   "Although the standard which governs plaintiffs' application [for conditional certification] is lax, and their burden modest, a court must nonetheless take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs."  *Hamelin v. Faxton-St. Luke's Healthcare*, 2009 U.S. Dist. LEXIS 9793, at *20 (N.D.N.Y. Jan. 26, 2009).   The Court's power to authorize notice must "be exercised with discretion and only in appropriate cases."  *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D. Ala. 1999).

The term "similarly situated" is not defined by the FLSA or its implementing regulations. *Lin v. Benihana Nat'l Corp.*, 2010 U.S. Dist. LEXIS 132871, at *7 (S.D.N.Y. Nov. 9, 2010).  In determining whether conditional certification is appropriate, courts in this district have looked at whether the named plaintiffs have established a sufficient factual nexus between their situation and the situation of other putative collective action members.  *Id.* at *7-8.  The evidence presented must be "sufficient to demonstrate that [current] and potential plaintiffs together were victims of a common policy or plan that violated the law.  *Id.* at *9; *see also Hamelin*, 2009 U.S. Dist. LEXIS 9793, at *19 ("For the proposed class members to be deemed similarly situated, however, there must be demonstrable similarity among the individual situations, . . . some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination." (internal quotations omitted)).

In making the required showing, "plaintiffs can rely on the pleadings, but only as supplemented by other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members." *Lin*, 2010 U.S. Dist. LEXIS 132871, at *8; *see also Hamelin*, 2009 U.S. Dist. LEXIS 9793, at *14 (court examines pleadings and affidavits to determine if plaintiffs and other members of the proposed class are sufficiently similarly situated

to warrant issuance of notice).  While plaintiffs' burden may not be significant, it is also "not invisible." *Brooks v. A Rainaldi Plumbing, Inc.*, 2006 U.S. Dist. LEXIS 89417, at *6 (M.D. Fla. Dec. 8, 2006).  Mere allegations in a complaint are insufficient to meet the plaintiffs' burden. *Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, at *6-7 (E.D.N.Y. June 12, 2006). "Furthermore, the plaintiff's supporting allegations must be specific, not conclusory."  *Lin*, 2010 U.S. Dist. LEXIS 132871, at *9.

### B.    Plaintiffs Have Not Established the Existence of a Uniform Policy Utilized by the Restaurant-Defendants

Each restaurant-defendant is a separately incorporated company with separate management. (Joanne Taylor Declaration, submitted herewith, ¶ 8.)  None of these entities report to a corporate parent.  (Taylor Dec. ¶ 8.)   Each restaurant-defendant created and applies its own tipping, compensation and other policies.  (Taylor Dec. ¶ 10.)  Plaintiffs cannot, therefore, establish that the four independent restaurant-defendants operated pursuant to a common policy or plan that violated the law.  Accordingly, Plaintiffs' have failed to meet their burden to show that certification of a single class of all of the restaurant-defendants' current and former tipped employees would be appropriate.

In this case, each declarant provided information only about that declarant's own experience at a single restaurant.  No declarant claims to have personal knowledge concerning the policies or procedures of any other restaurant.  While the general allegations against each entity – that they pay their employees less than the minimum wage, misappropriate tips and fail to notify employees of the tip credit – may be the same, Plaintiffs have entirely failed to provide support for their argument that a single overarching policy was applied to all of the restaurant-defendants.  Such failure is fatal to Plaintiffs' motion.  *See, e.g., Castro v. Spice Place, Inc.*, 2009 U.S. Dist. LEXIS 7678, at *7 (S.D.N.Y. Jan. 30, 2009) (a collective action made up of

employees of allegedly related restaurants that utilize similar compensation policies is inappropriate where plaintiffs have not shown that the similar policies were a reflection of a "common policy, maintained by all defendants, in violation of the FLSA."); *Brooks v. A Rainaldi Plumbing, Inc.*, 2006 U.S. Dist. LEXIS 89417, at *6-7 (M.D. Fl. Dec. 8, 2006) (plaintiffs failed to establish that a collective action of employees of two separate companies was appropriate where the affiants either worked for one company or the other, and no affiant alleged that they were employees of both companies at the same time).

Plaintiffs' own declarations illustrate that the separate companies implemented different policies with regard to tips.  For instance, not all of the restaurants maintained a tip pooling policy.  Tarry Lodge, for instance, instead required individual servers to tip-out to other members of the service staff.[3]  (*See, e.g.,* Jansen Dec. ¶ 6; Toro Dec. ¶ 6; Caro Dec. ¶ 6.)  Even restaurants that used a tip pooling system, used different forms to calculate the amount of tips put into the book.  (*Compare, e.g.,* Canosa Dec., Ex. A; Capsolas Dec., Ex. A.)  The individuals with whom tips were shared also differed by entity.  For example, servers at only some restaurants were required to share tips with the maitre d'.  (Capsolas Dec., Ex. A; Caro Dec., Ex. A.)  In some restaurants, 4% of wine sales were taken out of the tip pool for sommeliers.  (*See, e.g.,* Toro Dec. ¶ 6; Forbes Dec. ¶ 6.)  In other locations, the percentage was 4.5%. (*See, e.g.,* Alvarado Dec. ¶ 6; Sturgeon Dec. ¶ 3; Capsolas Dec. ¶ 6.)  Individuals at different entities were also provided with different explanations of how that percentage was distributed.  (*See, e.g.,* Toro Dec. ¶ 9 (told that percentage went to cover restaurant's expenses related to wine research); Canosa Dec. ¶ 9 (told that percentage went to the sommelier/wine director position); Forbes Dec. ¶ 8 (told that

---

[3] Tip pooling is the practice by which the tips received directly by the servers and intermingled in a common pool and then redistributed in varying amounts to members of the service staff.  Tipping out, by contracts, is the practice by which one directly tipped server gives a portion of his or her tips to another service employee who participated in providing service to customers and keeps the remainder of the tips for him or herself.  See, e.g. 12 NYCRR 146-2.14.

percentage used to cover expenses such as broken glass wear and office supplies).)  The policies of the separate restaurants also differed in other ways.  (Taylor Dec. ¶ 11.)  For instance, different restaurants utilized different tip allocations system.  (Taylor Dec. ¶ 11.)  These differences exemplify that the separate legal entities were not controlled by a single policy.

Plaintiffs themselves do not assert having knowledge that the policies about which they now complain were created anywhere other than at the particular restaurant where each plaintiff worked.  Plaintiffs' papers contain only a single assertion even suggesting the existence of a common policy.  Specifically, Paul Toro asserts in his declaration that Nancy Selzer informed him that "the company's policy at all Batali restaurants was that 4% of each night's wine sales is deducted from the service employees' tips and goes to the 'house.'"  (Toro Dec. ¶ 8.)[4]  As discussed above, however, it is clear that the same practice was not followed by all of the restaurant-defendants.  Moreover, Ms. Selzer denies making that statement to Toro.  (Nancy Selzer Declaration, submitted herewith, ¶ 3.)  A hearsay statement that has been rebutted by the declarant is insufficient to justify the certification of a class of plaintiffs.  *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008).[5]

Although the tipping and compensation policies maintained by the separate restaurant-defendants may have been similar, Plaintiffs have not established the existence of a uniform policy or plan, maintained by the restaurant-defendants together, that violated the FLSA.  Accordingly, Plaintiffs have failed to meet even their minimal burden of showing that they are similarly situated to the broad class they seek to represent.

---

[4] Other declarants identify the tipping system as the "restaurant's policy."  (*See, e.g.*, Ranaudo Dec. ¶ 8; Cutaiar Dec. ¶ 7.)

[5] Plaintiffs have also failed to establish that the restaurant-defendants maintained a uniform policy not to notify employees' of the provisions of § 203(m).  Each of the declarants stated only that they were not personally informed of the tip credit provision.  They do not allege any knowledge concerning whether any other employees received such notice.  Nor do they provide any facts to suggest the existence of an overarching policy applied by each of the separate restaurant-defendants not to provide notice of the tip credit.

**C.**   **Plaintiffs' Allegations of a Centrally Controlled, Uniform Operation Do Not Satisfy the Conditional Certification Requirements**

**1.**   **Plaintiffs Must Still Establish the Existence of a Common Plan**

The fact that Plaintiffs have alleged that the restaurant-defendants are joint employers (which they are not) does not absolve Plaintiffs of their burden of showing that Defendants maintained a common scheme or policy before conditional certification can be granted.  *Castro v. Spice Place, Inc.*, 2009 U.S. Dist. LEXIS 7678, at *9 (S.D.N.Y. Jan. 30, 2009).  In *Castro*, plaintiff sued six corporations that operated and managed six Thai restaurants, alleging that the defendants were joint employers under the FLSA.  *Id.* at *3, 8.  According to the complaint, defendants maintained a common policy of requiring plaintiffs to work over forty hours per week without providing minimum wage and overtime compensation.  *Id.* at *3.  Although Plaintiffs' affidavits showed that the restaurant-defendants followed similar policies with regard to compensation, they did not make the necessary showing that the actions were a reflection of a common policy, maintained by all defendants, in violation of the FLSA.  *Id.* at *7.  The court indicated that "[s]ome evidence of such a common policy to violate the law is particularly significant in this case given that Defendant Restaurants are six distinct New York corporations and that defendants dispute plaintiffs' characterization of defendants as a joint employer under the FLSA."  *Id.* at *8.  *See also Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 949 (M.D. Fla. 1994) (finding that even though defendants held themselves out to the public as one company and shared administrative functions, plaintiffs did not establish that their employees were similarly situated).  Similarly, here, Defendants' status as joint employers under the FLSA is disputed, and Plaintiffs have failed to provide evidence of a common policy to violate the law.

10

2.     **Plaintiffs' Allegations Fail to Establish that the Restaurant-Defendants are Joint Employers**

Even if Plaintiffs' joint employer allegations were relevant at this stage, Plaintiffs' allegations are woefully insufficient to establish a joint employment relationship.

Plaintiffs first argue that Mr. Batali and Mr. Bastianich unify the separate companies. It is true that Mr. Batali and Mr. Bastianich both have an ownership interest in each of the restaurant-defendants, but their percentage of ownership in the restaurant-defendants vary, as do their partners with respect to the separate companies. (Taylor Dec. ¶ 9.) In any event, the fact that the restaurant-defendants share common owners is insufficient to establish that they are joint employers. *See, e.g., Hukill v. Auto Care, Inc.*, 192 F.3d 437, 444 (4th Cir. 1999) ("With respect to common ownership, although Hukill has made a showing of common, though not identical ownership . . . such a showing is not enough" to establish that separate entities are an "integrated employer.").

Plaintiffs' assertions are also insufficient to establish that Mr. Batali and Mr. Bastianich are, themselves, employers. *Bravo v. Eastpoint Int'l, Inc.*, 2001 U.S. Dist. LEXIS 3647, at *4-5 (S.D.N.Y. Mar. 30, 2001) (facts that a corporation is inextricably identified with a public figure and that public figure is the owner and chairperson of the corporation are insufficient to hold the public figure liable as an "employer"). Plaintiffs offer nothing other than their own conclusory assertion for the argument that Mr. Batali and Mr. Bastianich maintain close control over the restaurants. The fact that Mr. Batali and Mr. Bastianich may frequent the restaurants, without any information concerning what they do while they are there, or any particular control they exercise with respect to the restaurants' employees, is insufficient to establish that they are employers of the restaurants' employees under the FLSA. *See, e.g., Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) (dismissing claims against shareholder because "his investment did not carry with it managerial responsibility"); *Jankowski*

11

*v. Castaldi*, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006) (dismissing individual defendant who did not participate in the operation of the business).

Plaintiffs also argue that Pasta Resources binds the restaurant-defendants together because "Pasta Resources performs centralized services for the Batali Group restaurants." (Pls' Br. 3.) The fact that Pasta Resources processes payroll for the separate legal entities, and offers them other limited administrative services, as alleged in Plaintiffs' brief, is insufficient to establish that the restaurant-defendants are joint employers, or that Pasta Resources can be considered an employer of the restaurants' employees under the FLSA. *See, e.g.*, *Maddock v. KB Homes, Inc.*, 2007 U.S. Dist. LEXIS 95763, at *13 (C.D. Cal. Oct. 19, 2007) (parent company maintained employment records for subsidiaries and parent and subsidiary companies shared a payroll service, but these facts alone are as a matter of law insufficient to establish that a parent and subsidiary are a joint employer under the economic reality test).

Because here, as in *Castro*, the Defendants dispute that they are joint employers, and Plaintiffs' assertions are insufficient to establish a the existence of a common policy or plan to violate the FLSA, Plaintiffs' motion for conditional certification of a single collective action class should be denied.

**D.  Conditional Certification of a Class Including Employees of the Non-Defendant Entities Would be Improper**

**1.  There is no Evidence that the Non-Defendant Entities' Employees are Similarly Situated to the Named Plaintiffs**

Nowhere in their papers do Plaintiffs cite a case providing them with authority to seek conditional certification of a class including employees of separate legal entities that are not named defendants. Plaintiffs' request suggests that an entity with no notice of the claims against it, or opportunity to respond thereto, could be incorporated into a collective action, perhaps even without its knowledge. Such a holding would certainly violate due process. *See, e.g., In re Asbestos Sch.*

*Litig.*, 1987 U.S. Dist. LEXIS 7033, at *13 (E.D. Pa. Aug. 3, 1987) (class action certification does not apply to companies that are not defendants in the action).  However, the Court need not even reach this due process issue in order to determine that, here, there is no evidence that employees of the non-defendant entities are similarly situated to the named Plaintiffs.

Simply, none of the named Plaintiffs worked for any of the non-defendant entities and not a single declarant purports to have knowledge concerning the policies in effect there.[6]  Conditional certification is routinely denied with respect to separate companies (and even locations within a single company) where plaintiffs did not work, and about which plaintiffs do not have personal knowledge.[7]  For example, the plaintiffs in *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 360 (M.D. Ala. 1999), brought an FLSA claim against a corporation that owned a chain of restaurants. Although each of the named plaintiffs worked only at defendant's Dothan restaurant, they alleged that the same unlawful employment practices were common at every restaurant owned or operated by defendant.  *Id.* at 360-61.  Thus, the class plaintiffs sought to represent included workers who were employed at different restaurants and worked under different management personnel.  *Id.* at 362.  However, plaintiffs submitted affidavits signed only by individuals who worked at the Dothan restaurant and failed to show that any workers at defendant's other restaurants were subjected to employment practices that potentially violated the FLSA.  *Id.* at 362-63.  The court found, therefore,

---

[6] Plaintiffs note in their brief that an FLSA action has been brought against Del Posto alleging some of the same claims as alleged in this case.  Plaintiffs cannot, however, rely on the unverified complaint in that case to support their assertion that employees of Del Posto are similarly situated to the named plaintiffs in this case.  Because allegations in Plaintiffs' own complaint are insufficient to meet Plaintiffs' burden for conditional certification, *Prizmic v. Armour, Inc.*, 2006 U.S. Dist. LEXIS 42627, at *6-7 (E.D.N.Y. June 12, 2006), mere allegations in an unrelated complaint are also necessarily insufficient.

[7] The cases cited in this section are not directly analogous to the facts in this case because they involve either a single corporate entity with multiple locations or separate companies, all of which are named defendants in the action.  Defendants are not aware of any other plaintiffs ever having attempted to obtain conditional certification against an entity that is not a defendant in the case.

that conditional certification was only appropriate with respect to workers at the Dothan restaurant, and not at any other locations. *Id.* at 363-65.

Similarly, in *Hamelin v. Faxton-St. Luke's Healthcare*, 2009 U.S. Dist. LEXIS 9793, at *1 (N.D.N.Y. Jan. 26, 2009), plaintiffs brought an FLSA action against several entities, alleged to be "related organizations." Plaintiffs alleged that all of the defendants' hourly employees were subject to the same automatic meal break deduction practices, and that the common thread justified certification. *Id.* at *17. All of the plaintiffs who gave affirmations were former hourly employees of either Faxton-St. Luke's Healthcare or St. Luke's Home. *Id.* at *20-21. No affidavits were given from employees at any other defendant facility. *Id.* at *26. The affirmations provided by plaintiffs did not state that they had personal knowledge that health care workers at those facilities were subject to similar issues of short staffing requiring them to work through their meal breaks. *Id.* Thus, even applying the relatively generous standard for granting conditional certification, the court only permitted the case to proceed with respect to current and former employees at St Luke's Healthcare and St. Luke's Home. *Id.* at *2-3. *See also Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) (conditional certification denied with respect to stores owned and operated by Dominos other than the location where the named plaintiffs worked); *Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016 (S.D. Cal. Apr. 22, 2008) (where plaintiffs provide no real evidence, beyond their own speculative beliefs, suggesting that employees at other locations are subject to a common policy or plan, collective action certification of a broad nationwide class is inappropriate); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249 (M.D. Tenn. 1996) (conditional certification denied with respect to Defendant's concept restaurants other than Shoney's, where the named plaintiffs worked).

Plaintiffs have offered no evidence concerning the policies in effect at Del Posto, Lupa or Esca, let alone any evidence that the policies in effect at those non-defendant entities were part of a

common policy that injured the named plaintiffs in this case.  Plaintiffs have, thus, failed to establish that conditional certification of a class of the non-defendant entities' employees would be proper.

### 2.   None of the Named Plaintiffs are Similarly Situated to Employees of the Non-Defendant Entities

Recognizing their failure to provide any information concerning the policies in effect at the non-defendant entities, Plaintiffs may attempt to submit a declaration by a Lupa or Esca opt-in plaintiff with their reply.  However, such a late filed declaration would not suffice to establish that employees of either entity should be included in Plaintiffs' collective action.[8]  To maintain a collective action under the FLSA, a named plaintiff must be able to show that he or she is similarly situated to the proposed class.  *Davis v. Lenox Hill Hospital*, 2004 U.S. Dist. LEXIS 17283, at *22 (S.D.N.Y. Sept. 1, 2004).  "The test is whether there is a 'factual nexus' between the claims of the named plaintiff[s] and those who have chosen to opt-in to the action."  *Id.* at *23.  Because there is no "named plaintiff" who worked at Del Posto, Lupa or Esca (and there is no evidence that these non-defendant entities shared a uniform, common policy with the named defendants), there is no named plaintiff who could be considered similarly situated to the non-defendant entities' employees.

## IV.   REVISIONS TO PLAINTIFFS' NOTICE ARE REQUIRED

Although Defendants disagree with the scope of Plaintiffs' proposed class, Defendants do agree that separate notices of pendency can be distributed to the current and former tipped employees (excluding sommeliers) of the restaurant-defendants.

The Court has the authority to reformulate the proposed definition given by the Plaintiffs of the potential opt-in class.  *Hamelin v. Faxton-St. Luke's Healthcare*, 2009 U.S. Dist. LEXIS

---

[8] Unsurprisingly, there are no opt-in plaintiffs in this case who were employed by Del Posto.  There is already an FLSA action pending against Del Posto brought by 27 of its current and former employees. The Del Posto case has been highly publicized and it is unlikely that anyone interested in joining that action has not already done so.

9793, at *27 (N.D.N.Y. Jan. 26, 2009). The Court also has broad discretion with respect to the content of the notice provided to potential collective action members. *Malena v. Victoria's Secret Direct, LLC*, 2010 U.S. Dist. LEXIS 121320, at *10 (S.D.N.Y. Nov. 16, 2010). In exercising that discretion, the Court must "consider the overarching policies of the collective suit provisions," and ensure that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009) (internal quotations omitted).

### A.     The Court Should Conditionally Certify Subclasses

Defendants propose that the court conditionally certify the following subclasses, and send a separate notice of pendency to each class: (1) All tipped employees (excluding sommeliers) who were employed at Babbo within the last three years; (2) All tipped employees (excluding sommeliers) who were employed at Otto within the last three years; (3) All tipped employees (excluding sommeliers) who were employed at Casa Mono within the last three years; and (4) All tipped employees (excluding sommeliers) who were employed at Tarry Lodge within the last three years. Defendants' sample proposed notice is submitted herewith as Exhibit A to the Declaration of A. Michael Weber.

### B.     It is Premature to Require Defendants to Produce Social Security Numbers

Defendants agree to produce the names and last known addresses of all tipped employees (excluding sommeliers) who have worked for any of the restaurant-defendants within the last three years.[9] Defendants believe it is premature, at this time, to produce their current and former employees' social security numbers. The disclosure of employee social security numbers "raises

---

[9] For all of the reasons discussed, plaintiffs' request for a list identifying all "tipped employees who were employed at any Batali Group restaurant in the state of New York" (Pls. Br. 18) is overbroad and improper.

obvious privacy concerns." *Lin v. Benihana Nat'l Corp.*, 2010 U.S. Dist. LEXIS 132871, at *24 (S.D.N.Y. Nov. 9, 2010).

Plaintiffs seek this information because some of the consent forms they send *may* be returned as undeliverable.  At this point, however, we do not know how many, if any, consent forms will be undeliverable.  Defendants should not be required to disclose this sensitive and personal information about all employees because of the possibility that it may be necessary for some.  Instead, the parties should wait to see which, if any, consent forms are returned as undeliverable.  At that point, Defendants can provide the social security numbers only for those employees.  Courts regularly agree that it is unnecessary and inappropriate for defendants to provide social security numbers with their initial production of names and addresses.  *See, e.g.*, *In re Penthouse Exec. Club Comp. Litig.*, 2010 U.S. Dist. LEXIS 114743, at *19 (S.D.N.Y. Oct. 27, 2010); *Kim v. Kap Sang Kim*, 2010 U.S. Dist. LEXIS 72236, at *6-7 (E.D.N.Y. July 19, 2010); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489-90 (S.D.N.Y. 2009); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009); *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090, at *26 (S.D.N.Y. Oct. 5, 2006).  Until Plaintiffs can establish a particular need for this private information, it should not be produced.

### C.      It is Unnecessary for Defendants to Produce Telephone Numbers

Conditional certification allows plaintiffs to send a notice of pendency to the putative class members.  Defendants will be turning over personal information about the certified class members for that limited purpose only.  Because there is no other reason for Plaintiffs to use the information produced by Defendants, it is unnecessary and inappropriate for Defendants to produce the putative class members' telephone numbers.  The notice of pendency will be sent by first class mail.  No telephone calls will be necessary.  If, as stated above, any of the notices are returned as undeliverable and additional information is required to locate the putative class

member, Defendants will produce any such additional information at that time.  *See, e.g., Arevalo v. D.J.'s Underground, Inc.,* 2010 U.S. Dist. LEXIS 109193, at *7 (D. Md. Oct. 13, 2010) (denying plaintiffs' motion to compel defendants to produce phone numbers for the putative plaintiffs); *Campbell v. PriceWaterhouse Coopers, LLP*, 2008 U.S. Dist. LEXIS 44795, at *7-8 (E.D. Cal. June 5, 2008) (holding that telephone numbers should not be released unless notification of putative plaintiffs by first class mail is insufficient).

### D.    Defendants Should Not be Required to Post the Notice

In addition to the circulation of a notice of pendency, Plaintiffs seek to post the notice "in all Batali Group restaurants." (Pls. Br. 17.)  First, there is no basis for the notice of pendency to be posted at restaurants that are not defendants in this action, and whose employees are not putative class members.  Second, there is no basis for the notice of pendency to be posted even at restaurants that are defendants in this action.  Although Plaintiffs analogize this to a situation where a corrective notice is required, Plaintiffs are not seeking to post a corrective notice – nor would they have reason to do so.  They are seeking to post the very same notice that will be distributed to the restaurant-defendants' current and former employees by mail.  The only group that will be reached by such a posting are the restaurant-defendants' current employees.  But those current employees will receive the very same notice by mail.  There is no reason to assume that the restaurant-defendants will not have up-to-date mailing addresses for their current employees.  Accordingly, first class mail is the best practicable way to provide notice and will be sufficient to provide potential class members with the notice to which they are entitled. *Hintergerger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, at *41-42 (W.D.N.Y. Oct. 21, 2009); *see also Shajan v. Barolo, Ltd.*, 2010 U.S. Dist. LEXIS 54581, at *5 (S.D.N.Y. June 2, 2010) ("Since all current employees will be receiving the notice, there is no need to require defendants to post the notice in the workplace."); *Ritzer v. UBS Fin. Servs.*, 2008 U.S. Dist.

LEXIS 71635, at *11-12 (D.N.J. Sept. 22, 2008) (finding it unnecessary to conspicuously post the notice on defendant's premise as requested by plaintiffs).

The cases cited by Plaintiffs are misleading and inapplicable because they involve the issuance of a corrective notice after a defendant misrepresented information about the action in a way to discourage absent putative class members from joining the case or actually solicited exclusion requests from putative class members.  There is no evidence of Defendants taking any such action here.  Although Plaintiffs claim that defendant Joseph Bastianich has sought to intimidate workers, their only support for that argument are Mr. Bastianich's comments disagreeing with Plaintiffs' claims.  There is no authority suggesting that a defendant can not state his opinion about the merits or motivations of Plaintiffs' lawsuit.  There is further no evidence to support Plaintiffs' uncorroborated assertion that Mr. Bastianich's "bad example" has resulted in retaliation against two of the plaintiffs.[10]  Accordingly, there is no basis for Plaintiffs' suggestion that any posting should be put up at the restaurants.

## V.    EQUITABLE TOLLING IS INAPPROPRIATE

Plaintiffs have suggested in correspondence to the Court that they seek to make an application for equitable tolling.  Plaintiffs have not yet done so, and their basis for such a request is unclear.  If Plaintiffs do present an argument for equitable tolling, Defendants request an opportunity to respond directly thereto.  Regardless of what Plaintiffs argue, however, equitable tolling is unwarranted.

---

[10] Plaintiffs have asserted no retaliation claim in this lawsuit.  Defendants believe that Ms. Capsolas and Mr. Alvarado are attempting to trump up a retaliation claim against defendants to insulate themselves from normal workplace criticisms and standards, and to obtain special treatment simply because they happen to be plaintiffs in a lawsuit.  Defendants have responded to each and every occurrence alleged by Ms. Capsolas and Mr. Alvarado to be retaliatory and explained the legitimate reason for the occurrence and/or asked Ms. Capsolas and Mr. Alvarado for additional information concerning their claim.  (Dec. 14, 2010 Letter, Ex. B to Weber Dec.)  To date, neither Ms. Capsolas nor Mr. Alvarado has provided the requested additional information.

"Equitable tolling is 'a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.'" *Hintergerger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, at *49 (W.D.N.Y. Oct. 21, 2009) (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)). "In this Circuit, 'equitable tolling is only appropriate in [] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights.'" *Hintergerger.*, 2009 U.S. Dist. LEXIS 97944, at *45 (quoting *Zerilli-Edelglass v. NYC Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). FLSA cases in which tolling has been granted involved: (1) a court imposed stay pending the resolution of a dispositive motion; (2) a stipulation among the parties to toll the statute; or (3) the employer's failure to post required notices advising employees of their FLSA rights. *Hintergerger*, 2009 U.S. Dist. LEXIS 97944, at *46. None of those circumstances exist here.

In *Hintergerger*, plaintiffs' motion for an expedited notice was filed on May 28, 2008. *Id.* at *43. Due to a number of litigation and motion practice-related delays, the court did not decide plaintiffs' motion for notice until October 21, 2009, more than one year after the motion had been made. *Id.* Plaintiffs sought equitable tolling of the statute of limitations from May 28, 2008 through the date of the court's decision on the motion. *Id.* Finding that plaintiffs had offered no proof that a reasonably prudent potential plaintiff would not have known of his or her rights, and that litigation delays are not an extraordinary circumstance for tolling purposes, the court denied plaintiffs' motion for equitable tolling. *Id.* at *47-49.

Similarly, here, there is no evidence that a reasonably prudent potential plaintiff would not have known of his or her right to receive minimum wage and overtime pay. "Pursuit of that right is not dependent on the commencement or certification of a collective action, and a reasonably diligent person could have acted by pursuing an individual or collective action for relief." *Id.* at *47-48. In addition to employees' knowledge of their legal rights generally, this

very litigation has been highly publicized.  (Weber Dec. ¶ 4 & Ex. C.)  Plaintiffs' counsel, Maimon Kirschenbaum, is regularly named in articles referencing the litigation.  (Weber Dec., Ex. C.)  Thus, very few, if any, potential plaintiffs are likely to be unaware of the pending litigation or how to join it.  The putative class members' knowledge of the litigation is evidenced by the fact that several individuals have already opted in, despite the fact that no notice of pendency has yet been sent.

Any suggestion that Defendants acted in bad faith to delay this matter, thus warranting tolling, is untrue and improper.  Plaintiffs filed their motion for conditional certification on October 21, 2010.  After considering the available options, Defendants decided the most reasonable and efficient way to proceed would be to agree to a permit Plaintiffs to send a notice of pendency to the restaurant-defendants' employees, without the need for motion practice.  On November 29, the parties agreed that they would give themselves a month to negotiate an appropriate notice.  Had the parties reached an agreement as Defendants proposed, the notice would likely already have been distributed.

Although Plaintiffs now claim that they were not aware of the extent of Defendants' disagreements with the proposed notice, Defendants never hid their intentions from the Plaintiffs. In fact, the November 29 letter Defendants sent to the Court, the content of which was pre-approved by Plaintiffs' counsel, specifically stated that "Defendants have agreed with plaintiffs not to oppose the conditional certification of a collective action and the circulation of notices to tipped employees (other than sommeliers) who worked for each of the **restaurant-defendants** within the last three years, pursuant to Section 216(b) of the FLSA."  (Nov. 29, 2010 Letter, Ex. D. to Weber Dec.) (emphasis added).  Nowhere in the letter did Defendants suggest that they would agree to send notice to tipped employees who worked for any non-defendant restaurant. The letter also reflected Defendants' position that multiple notices to the restaurant-defendants'

21

employees may be appropriate.   Thus, the very arguments Defendants make in this opposition brief (that separate notices are appropriate and that Plaintiffs should not be permitted to send notice to non-defendant entities' employees) were identified to Plaintiffs in November.   There is no support for Plaintiffs' suggestion, therefore, that Defendants acted in bad faith to delay the circulation of notice.   Because any delay here has been caused only by the nature of typical litigation, equitable tolling is unwarranted.

## VI.    CONCLUSION

For all of the reasons discussed herein, Defendants respectfully request that the Court deny Plaintiffs' motion for Conditional Certification and Court Authorized Notice pursuant to Section 216(b) of the FLSA, and order the conditional certification, only, of separate subclasses of each restaurant-defendant's tipped employees (excluding sommeliers) who have been employed within the last three years.   Defendants further request that the Court authorize notice substantially in the form submitted by Defendants, and that Defendants be ordered to produce, only, the names and last known addresses of their tipped employees (excluding sommeliers) who have been employed within the last three years.

Dated: January 19, 2011
　　　New York, New York

　　　　　　　　　　　　　　　　/s A. Michael Weber
　　　　　　　　　　　　　　　　A. Michael Weber (mweber@littler.com)
　　　　　　　　　　　　　　　　Michael P. Pappas (mpappas@littler.com)
　　　　　　　　　　　　　　　　Sara Danielle Sheinkin (ssheinkin@littler.com)
　　　　　　　　　　　　　　　　LITTLER MENDELSON, P.C.
　　　　　　　　　　　　　　　　900 Third Avenue
　　　　　　　　　　　　　　　　New York, New York 10022.3298
　　　　　　　　　　　　　　　　212.583.9600

　　　　　　　　　　　　　　　　Attorneys for Defendants