UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

STEPHANIE CAPSOLAS, et al,

                    Plaintiffs,

        - against -

PASTA RESOURCES, INC., et al.,

                    Defendants.

10 Civ. 5595 (RJH)

**<ins>MEMORANDUM OPINION AND ORDER</ins>**

Richard J. Holwell, District Judge:

       Plaintiffs bring this suit pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). They allege that their employers paid them less than the minimum wage, yet illegally retained a portion of their tips. Defendants Mario Batali ("Batali") and Joseph Bastianich ("Bastianich") own a group of restaurants in New York metropolitan area: Babbo Ristorante e Enoteca ("Babbo"), Otto, Casa Mono, Bar Jamon, Esca, Lupa, Del Posto, and Tarry Lodge. Pasta Resources, Inc. ("Pasta Resources") administers these restaurants, performing services like administering payroll and managing gift cards. Plaintiffs work at five of the eight Batali restaurants. They now seek conditional certification of a class so that they can send out notice to other tipped employees at all eight of the Batali restaurants. Defendants do not contest conditional certification with respect to employees of the five restaurants where plaintiffs work: Babbo, Otto, Casa Mono, Bar Jamon, and Tarry Lodge. But they argue that the Court should not

1

certify a class as to Esca, Lupa, and Del Posto because the plaintiffs have not made a sufficient showing that employees of these restaurants were subject to a common policy of withholding tips.

## BACKGROUND

Plaintiffs are all employed by Batali restaurants.  They held various positions in these restaurants, such as backwaiter, server, and bartender.  At the end of evening, these employees would divide up tips according to a formula.  They all allege that the house deducted a portion of the night's wine sales from the tips they were supposed to receive.

Herman Alvarado ("Alvarado") and Stephanie Capsolas ("Capsolas") are both employed at Babbo, Alavarado as a backwaiter and Capsolas as a server.  (Bien Decl. Exs. X, AA.)  Both report that Babbo deducted 4.5% of total wine sales from the tip pool, and Capsolas attaches a pre-printed tip worksheet that indicates that 4.5% of total wine sales are to be deducted.  (Bien Decl., Ex. AA.)

Sara Barron ("Barron"), Jeffrey Cutaiar ("Cutaiar"), and Andrew Ranaudo ("Ranaudo") all worked for Otto as servers.  (*Id*., Exs. Y, CC, and HH.)  All reported that Otto deducted from the night's tips a portion equal to the night's wine sales.  (*Id*.)  Barron and Cutaiar reported that Otto's managers told them that this amount went to the "wine program."  (*Id*., Ex. Y, CC.) Cutaiar reports that a general manager at Otto indicated that this money went back to the house. (*Id*., Ex. CC.)

Roger Caro ("Caro") and Daniel Jansen ("Jansen") work as servers at Tarry Lodge.  (*Id*., Exs. BB, FF.)  Caro briefly worked as a manager, but returned to being a server.  (*Id*., Ex. BB.) Both reported that a portion equal to 4% of the nightly wine sales was deducted from the nightly tip pool.  (*Id*., Exs. BB, FF.)  Caro provided a spreadsheet dividing a night's tips among the wait

2

staff that documents the 4% deduction.  (*Id.*, Ex. BB.)  Both also report that in a staff meeting

partner and owner Nancy Seltzer refused to justify the policy and said it was not going to change.

(*Id.*, Exs. BB, FF.)  Paul Toro ("Toro") also worked as a bartender at Tarry Lodge.  (*Id.*, Ex. II.)

He reports that 4% of the nightly wine sales was deducted from the tip pool.  (*Id.*)  He further

reports that when he asked Seltzer about the deduction, she said that it was a policy across the

Batali restaurant group that a portion of the night's wine sales went to the house.  (*Id.*)  On

another occasion, Toro heard Seltzer say that the money went to cover expenses related to wine

research.  (*Id.*)

   Chris Ell ("Ell") and Chris Forbes ("Forbes") are both former employees of Casa Mono.

(*Id.*, Exs. DD, EE.)  Ell worked as a server, and Forbes worked as a server and bartender.  (*Id.*)

Both indicated that 4% of nightly wine sales was deducted from the tip pool, and both provided a

blank, pre-printed worksheet that included a space for the 4% deduction.  (*Id.*)  Both heard

various explanations for the deduction, including that it was supposed to cover broken glassware

and that it helped to fund the wine program.  (*Id.*)

   Jesse Patrick ("Patrick") is a former bartender at Bar Jamon.  (*Id.*, Ex. GG.)  He reported

that 4% of the night's wine sales was deducted from the tip pool each evening.  (*Id.*)  He

provided a pre-printed worksheet that included a space for the 4% deduction.  (*Id.*)  He indicated

that he was not entirely certain why the 4% was deducted, but stated that the bartender who

trained him told him that the 4% went to the wine program.  (*Id.*)

   Each of these restaurants operates as a separately incorporated entity.  (Taylor Decl., ¶ 9.)

Batali and Bastianich have an ownership stake in each of the entities, though the exact

percentage varies from restaurant to restaurant.  (*Id.*)  Both oversee the operations of each

restaurant and visit each restaurant regularly.  Pasta Resources is a separate company that provides administrative support to the restaurants, including payroll and marketing.  (*Id.*, ¶ 5.)

## DISCUSSION

Plaintiffs seek conditional certification of a collective action pursuant to § 216(b) of the FLSA, which provides, "An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The Second Circuit has endorsed a two-step method for managing FLSA collective actions.  In the first step, the court authorizes plaintiffs to send out notices to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to the FLSA violation alleged.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.* (internal quotations and citations omitted).  "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

## I.   Existence of a Common Policy or Plan

Defendants' primary argument against certification with respect to Esca, Lupa, and Del Posto is that plaintiffs have not adequately shown that these restaurants had a tip deduction policy similar to the policies where the named plaintiffs worked.  They argue that each restaurant functions as a separate entity and sets its own policies, including tip policy.  As evidence for this claim, defendants point to the fact that the amount deducted varied from 4-4.5% of total wine sales and to the fact that the method for distributing tips among tipped employees varied from restaurant to restaurant.

Plaintiffs argue that there is sufficient evidence that the restaurants shared a common policy.  Toro stated that he learned from Seltzer that all Batali restaurants shared a policy of deducting a portion of wine sales from the tip pool and giving it to the house.  Seltzer now denies making this statement, and defendants argue that her denial negates an inference of common policy.  Of course, the Court at this point does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits.  *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  Nonetheless, the evidence that plaintiffs have adduced corroborates Toro's report.  It is undisputed that five of the restaurants withheld roughly the same percentage (all but Babbo withheld 4%, and Babbo withheld 4.5%) of exactly the same thing (wine sales).  It is highly unlikely that each restaurant would reach this same policy independently.  Plaintiffs who sought an explanation for the deduction were mostly told the same story:  the money was supporting the wine program.  Furthermore, many employees provided pre-printed tip worksheets with a space for the deduction, indicating the policy was entrenched and not the actions of particular managers.  All of these facts support a reasonable inference that

there was a uniform policy across the eight restaurants, all of which share common ownership, are supervised by the same individuals, and are administered by the same company.

Other courts have certified classes based on similar evidence of a uniform policy.  In *Fasanelli v. Heartland Brewery*, *Inc.*, Judge Batts certified a class of restaurant workers across a chain based on statements of two managers that a uniform policy of changing restaurant workers' hours existed, even though the plaintiffs had only worked at some of the restaurants.  516 F. Supp. 2d 317 (S.D.N.Y. 2007).  Here, a manager, Seltzer, has allegedly admitted that a uniform policy exists.  Similarly, in *Garcia v. Pancho Villa's of Huntington Vill.*, the court certified a class of restaurant workers who worked for three restaurants, even though all of the named plaintiffs worked at the same location.  678 F. Supp. 2d 89 (E.D.N.Y. 2010).  The court did so based on the inference that the restaurants were likely to share policies because the same family owned and managed all three restaurants.  *Id*. at 93.  In addition, one of the employees had worked for one of the other restaurants in the past and experienced similar treatment, and other employees had heard reports of similar treatment at the third.  *Id*. at 94.  Toro's allegation is at least as persuasive as the second-hand reports in *Garcia*.

These cases stand in contrast to cases such as *Rudd v. T.L. Cannon Corp.*, No. 10 Civ. 591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011).  There, the court declined to certify a class of restaurant workers across a chain when workers were employed at only some of the restaurants. The court did so in large part because plaintiffs merely detailed isolated incidents at the restaurants where they worked and did not articulate an overarching policy that unified the alleged abuses across restaurants.  *Id*. at *9.  Here, by contrast, the plaintiffs have described a specific policy, namely that the house deducts and retains a portion of their tips.  And in *Castro v. Spice Place, Inc.*, Judge Sweet declined to certify a class across a chain of restaurants because

6

plaintiffs had not sufficiently alleged that the defendant restaurants were under common

ownership.  No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y. Jan. 29, 2009).  Here, although

defendants argue that the restaurants were run separately, they do not dispute that Bastianich and

Batali own a share of each restaurant.  Plaintiffs have carried their burden in making a modest

factual showing that employees of all eight restaurants were subject to a common policy.

Defendants also appear to argue that plaintiffs have not named a proper defendant with

respect to Esca, Lupa, and Del Posto.  It is true that the plaintiffs have not named the

corporations that are the direct employers of the wait staff at Esca, Lupa, and Del Posto.  But

they have named Batali and Bastianich as defendants and alleged that they were employers for

the purposes of the FLSA.  Plaintiffs are entitled to choose to proceed against some defendants

and not others, and the Court will not ordinarily interfere with a plaintiff's litigation strategy.

Defendants also appear to argue that Batali and Bastianich are not employers under the terms of

the FLSA.  This argument is addressed to the merits of the case.  As stated above, "[a]t this

procedural stage, the court does not resolve factual disputes, decide substantive issues going to

the ultimate merits, or make credibility determinations."  *Lynch*, 491 F. Supp. 2d at 368.  The

Court is satisfied that plaintiffs have made the required modest factual showing that similarly

situated employees exist in these three restaurants.

**II.  Administrative Issues**

*A.  Creation of Sub-Classes*

Defendants argue that the Court should divide potential opt-in plaintiffs into subclasses,

one for each restaurant.  While the Court may ultimately decide to divide plaintiffs into the

subclasses suggested by defendants, such an action is premature at this stage in the litigation.  As

of yet, the Court does not have sufficient information to make an informed decision regarding the

7

form that potential subclasses should take because there has been no discovery.  In the second

stage in FLSA collective actions, after discovery had been conducted, the defendants will have

an opportunity to argue that the Court should "decertify the class or divide it into subclasses."

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007).  Defendants are

free to renew their arguments at that time.

B.  *Which Information Regarding Potential Plaintiffs is to Be Produced*

Plaintiffs seek the names, addresses, telephone numbers, and social security numbers of

potential opt-in plaintiffs.  The parties have now agreed that defendants will produce employees

social security numbers only in the event that notice sent to the address provided by defendants is

returned as undeliverable.  This compromise is acceptable to the Court.  Plaintiffs also seek the

telephone numbers of potential opt-in plaintiffs.  They note that defendants could also be

required to produce this information pursuant to Rule 26(a)(1)(A), which mandates the

disclosure of information regarding potential witnesses, including their telephone numbers.  *See

also Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09 Civ. 1148, 2010 WL 2362981, at *2

(S.D.N.Y. June 14, 2010) (observing that the "weight of authority in this district counsels in

favor of allowing" disclosure of contact information, including telephone numbers, of potential

plaintiffs in pre-certification discovery).  The Court directs defendants to produce the telephone

numbers of potential opt-in plaintiffs.

C.  *Posting Notice in Restaurants*

Plaintiffs allege that they have been subject to retaliation since the filing of this lawsuit,

so it is necessary as a corrective measure to post a notice in the restaurants that this suit is

pending.  Among other forms of retaliation, Plaintiffs allege that Bastianich has referred to this

lawsuit as "bullshit" in the press and held an employee meeting during which he stated that

8

plaintiffs' lawyers, rather than employees, would benefit from the suit (Bien Decl., Ex. LL) and

that he would fight employees bringing this suit (Bien Decl., Ex. AA).  Capsolas also claims that

someone wrote the word "rat" on her locker at work, and she has attached a photograph of the

offending graffiti.  (Bien Decl., Ex. AA.)

Defendants argue that this notice is unnecessary, relying on cases that say that in the

absence of a showing that posted notice is necessary, first class mail is sufficient.  *E.g.*, *Shajan v.*

*Barolo, Ltd.*, No. 10 Civ. 1385, 2010 U.S. Dist. LEXIS 54581, at *5 (S.D.N.Y. June 2, 2010).

Plaintiffs rely upon *Pefanis v. Westway Diner, Inc.*, where Judge Cote ordered the defendant

restaurant company to post a curative notice in the restaurant in order to remedy irregularities in

employees' decisions to opt out of a class of plaintiffs seeking redress of alleged New York

Labor Law violations certified pursuant to Rule 23.  08 Civ. 002, 2010 WL 3564426, at*2

(S.D.N.Y. Sept. 7, 2010).  Judge Cote was concerned because class members had submitted their

exclusion forms directly to their supervisor, suggesting that they were opting out of the class as a

means of "curry[ing] favor" with their supervisor.  *Id*.  She ordered the posting of notice in the

workplace as a means of remedying the coercion plaintiffs may have felt to opt out of the suit.

*Id*.

Although the Court is troubled by plaintiffs' reports of retaliation, it is not persuaded that

the proper response is to post a duplicative notice in defendants' restaurants.  In *Pefanis*, Judge

Cote ordered the posting of notice to remedy suspected tampering with the first notice.  Here, it

is premature to conclude that mailed notice will prove ineffective.  Further, if plaintiffs are

experiencing retaliation, the proper procedural remedy is to amend their complaint to include

allegations of retaliation.

9

## CONCLUSION

For the reasons stated above, plaintiff's motion for conditional certification [39] is granted. The parties are directed to meet and confer regarding the form of a proposed notice. In the event that the parties cannot agree upon the form of proposed notice, they are directed to submit letter briefs to the Court within ten days of the filing of this decision.

**SO ORDERED.**

Dated: New York, New York
   May **9** , 2011

Richard J. Holwell

United States District Judge

10