# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE CAPSOLAS, HERNAN RICARDO ALVARADO, JEFFREY CUTAIAR, NICOLE MEDVITZ, PAUL TORO, DANIEL JANSON, ROGER CARO, CHRIS ELL, CHRIS FORBES, and JESSE PATRICK, on behalf of themselves and other similarly situated,<br><br>           **Plaintiffs,**<br><br>    v.<br><br>PASTA RESOURCES INC., BABBO LLC d/b/a BABBO RISTORANTE ENOTECA, PANE SARDO LLC d/b/a OTTO ENOTECA PIZZERIA, EL MONO LLC d/b/a CASA MONO and BAR JAMON, LA LOGGIA LLC d/b/a TARRY LODGE, MARIO BATALI, and JOSEPH BASTIANICH,<br><br>           **Defendants.** | No. 10-cv-5595 (RLE) |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release is entered into by and between Plaintiffs, the Class Members that the Plaintiffs seek to represent, and Defendants.

## RECITALS

WHEREAS, plaintiffs Stephanie Capsolas and Hernan Ricardo Alvarado filed a Class Action Complaint on July 22, 2010;

WHEREAS, plaintiffs Stephanie Capsolas, Hernan Ricardo Alvarado, Jeffrey Cutaiar, Nicole Medvitz, Paul Toro, Daniel Jansen, Roger Caro, Chris Ell, Chris Forbes, Jesse Patrick, and Diana Dietrich filed a First Amended Complaint (the "Complaint") on July 29, 2010;

WHEREAS, plaintiff Diana Dietrich voluntarily dismissed her claims against Defendants without prejudice on August 25, 2010;

WHEREAS, on May 10, 2011, the Court conditionally certified the Fair Labor Standards Act ("FLSA") portion of this action as a collective action;

WHEREAS, the Complaint asserted class claims under the New York Labor Law ("NYLL") and collective claims under the FLSA and sought recovery of, among other things, unpaid overtime wages, unpaid minimum wages, unpaid spread-of-hours pay, unpaid misappropriated tips, liquidated damages, and attorneys' fees and costs;

1

WHEREAS, Defendants denied and continue to deny all of the allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable, or owe damages, to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, throughout the course of this Litigation, Class Counsel and Defendants' Counsel have engaged in substantial discovery. Defendants produced thousands of documents to Class Counsel including, but not limited to, personnel files, daily time records, payroll reports and tip-sheets. In addition, parties were deposed and Class Counsel interviewed and obtained declarations from numerous Plaintiffs and Class Members, reviewed thousands of documents produced by Defendants, and analyzed time and payroll records;

WHEREAS, the Parties agreed to participate in voluntary mediation ("Mediation") before Ruth Raisfeld, Esq., an experienced wage and hour mediator who has successfully mediated several lawsuits brought by employees against New York City restaurants, in an attempt to resolve the issues pending before the Court in this Litigation. The Mediation was held on October 27, 2011, at the offices of Defendants' Counsel. Present at the Mediation were Defendants' representatives, Defendants' Counsel and Class Counsel;

WHEREAS, the Mediation was successful and the Parties reached an agreement in principle to settle the Litigation on a class wide basis. Following the Mediation the Parties executed a Memorandum of Understanding setting forth the terms of their agreement. The Parties further agreed to draft a comprehensive joint stipulation of settlement and release incorporating the terms of the memorandum of understanding and to submit the joint stipulation of settlement and release to the Court for approval;

WHEREAS, Class Counsel and Plaintiffs represent that that the documents Defendants produced during discovery were relevant to the claims asserted on behalf of Plaintiffs and that the production of these documents facilitated meaningful and productive settlement discussions, including in the Mediation;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation and the impact of this Agreement on Plaintiffs and the Class Members;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties

2

hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

**1.1** **Agreement.** "Agreement" shall mean this Joint Stipulation of Settlement and Release.

**1.2** **Babbo Qualified Class Member.** "Babbo Qualified Class Member" shall mean a Qualified Class Member who worked at Babbo.

**1.3** **Claims Administrator.** "Claims Administrator" shall mean the entity selected by Plaintiffs to provide notice to the Class and administer payment of the settlement to Class Members. The Claims Administrator is Kurtzman Carson Consultants.

**1.4** **Class Counsel.** "Class Counsel" shall mean Joseph, Herzfeld, Hester & Kirschenbaum LLP and Outten & Golden LLP.

**1.5** **Class Members.** "Class Members" shall mean all FLSA Opt-In Plaintiffs, all FLSA Class Members, and all NYLL Class Members, as defined below.

**1.6** **Court.** "Court" shall mean the United States District Court for the Southern District of New York, the Honorable Richard J. Holwell presiding.

**1.7** **Covered Period.** "Covered Period" shall mean the period from July 22, 2004 through the date that the Court enters the Order Granting Preliminary Approval, as defined herein.

**1.8** **Del Posto Qualified Class Member.** "Del Posto Qualified Class Member" shall mean a Qualified Class Member who worked at Del Posto.

**1.9** **Defendants.** "Defendants" shall mean Pasta Resources Inc., Babbo LLC d/b/a Babbo Ristorante Enoteca, Pane Sardo LLC d/b/a Otto Enoteca Pizzeria, El Mono LLC d/b/a Casa Mono and Bar Jamon, La Loggia LLC d/b/a Tarry Lodge, Mario Batali, and Joseph Bastianich.

**1.10** **Defendants' Counsel.** "Defendants' Counsel" shall mean Fox Rothschild LLP and Littler Mendelson P.C. For the purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Carolyn Richmond and Eli Freedberg of Fox Rothschild LLP, and A. Michael Weber, Michael Pappas, and Kristen O'Connor of Littler Mendelson P.C.

**1.11** **Effective; Effective Date.** The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the later of: (a) thirty (30) days following entry of final order by the Court approving this Agreement if no appeal is taken of the final approval order, or (b) the Court's entry of a final order and judgment after resolving any appeals.

3

**1.12**   **El Mono Qualified Class Member.** "El Mono Qualified Class Member" shall mean a Qualified Class Member who worked at Bar Jamon and/or Casa Mono.

**1.13**   **Esca Qualified Class Member.** "Esca Qualified Class Member" shall mean a Qualified Class Member who worked at Esca.

**1.14**   **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

**1.15**   **FLSA Opt-In Plaintiffs.** "FLSA Opt-In Plaintiffs" shall mean all individuals who filed or file Consent to Join Forms with the Court on or before the date that this Agreement is fully executed.

**1.16**   **FLSA Class; FLSA Class Member.** "FLSA Class" shall mean all FLSA Opt-In Plaintiffs and all individuals who work or worked for Defendants as a Captain, Server, Waiter, Busser, Runner, Backwaiter, Bartender, and/or Barback between July 22, 2007 and the date that this Agreement is executed and who endorse their settlement checks.

**1.17**   **Litigation.** "Litigation" shall mean *Capsolas v. Pasta Resources Inc.,* Case No. 10 Civ. 5595 (RJH), pending in the United States District Court for the Southern District of New York.

**1.18**   **Lupa Qualified Class Member.** "Lupa Qualified Class Member" shall mean a Qualified Class Member who worked at Lupa.

**1.19**   **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Payment after deductions for court-approved attorneys' fees and costs as described in Section 3.2, court-approved service awards to Plaintiffs as described in Section 3.2, settlement administration costs, as described in Section 2.1, any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1, and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.

**1.20**   **NYLL Class; NYLL Class Members.** "NYLL Class" shall mean all individuals who work or worked for Defendants as a Captain, Server, Waiter, Busser, Runner, Backwaiter, Bartender, and/or Barback from July 22, 2004 through the date that this Agreement is executed, except that any individual who timely submits an exclusion request shall not be included in the NYLL Class. A member of the NYLL Class is a "NYLL Class Member."

**1.21**   **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

**1.22**   **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

4

**1.23** **Otto Qualified Class Member.** "Otto Qualified Class Member" shall mean a Qualified Class Member who worked at Otto.

**1.24** **Parties.** "Parties" shall mean Plaintiffs, the Class Members, and Defendants.

**1.25** **Plaintiffs.** "Plaintiffs" shall refer to Stephanie Capsolas, Hernan Ricardo Alvarado, Jeffrey Cutaiar, Nicole Medvitz, Paul Toro, Daniel Jansen, Roger Caro, Chris Ell, Chris Forbes, and Jesse Patrick and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

**1.26** **Qualified Class Member.** "Qualified Class Member" shall mean a Class Member who does not opt out in the manner prescribed in Section 2.5 of this Agreement.

**1.27** **Releasees.** "Releasees" shall mean Defendants, as defined herein, their respective affiliates, parent companies, subsidiaries, successors, and other related entities, and all of their incumbent and former officers, directors, owners, partners, shareholders, investors, insurers, agents, attorneys, employees, fiduciaries, successors, assigns, heirs, executors, administrators, and representatives, in their individual and/or representative capacities, and shall specifically include Il Posto LLC d/b/a Del Posto, Pulpo LLC d/b/a Esca, Red Clam LLC d/b/a Lupa and their respective affiliates, parent companies, subsidiaries, successors, and other related entities, and all of their incumbent and former officers, directors, owners, partners, shareholders, investors, insurers, agents, attorneys, employees, fiduciaries, successors, assigns, heirs, executors, administrators, and representatives, in their individual and/or representative capacities.

**1.28** **Settlement Payment.** "Settlement Payment" shall mean the $5,250,000 that Defendants pay to settle the Litigation.

**1.29** **Tarry Lodge Qualified Class Member.** "Tarry Lodge Qualified Class Member" shall mean a Qualified Class Member who worked at Tarry Lodge.

**2.** **APPROVAL AND CLASS NOTICE**

**2.1** **Retention of Claims Administrator.** The Claims Administrator shall be responsible for the claims administration process and distributions to Qualified Class Members as provided herein. The Parties agree to cooperate with the Claims Administrator and assist it in any reasonable way possible in administering the Settlement. The Claims Administrator's fees shall be paid from the Settlement Payment. The Claims Administrator shall be responsible for maintaining and securing all personal information for the Qualified Class Members. The claims administrator shall also be responsible for mailing of all notices required by the Class Action Fairness Act, the contents of which, aside from the calculation of each Class Member's share of the Settlement Payment, Defendants shall provide to the Claims Administrator within 10 days of the execution of this Agreement. The Parties shall have equal access to documents and information related to the administration of the settlement.

2.2    **Preliminary Approval by the Court.**  Within two weeks of the execution of this Agreement, Plaintiffs will submit to the Court a Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion").  In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things, (a) a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing which is appended hereto as Exhibit A, and (b) a proposed Order Granting Preliminary Approval.  The Preliminary Approval Motion will seek the setting of dates for opt-outs, objections, and a Fairness Hearing.  Plaintiffs shall provide drafts of the documents set forth above to Defendants for their review and comments prior to submitting them to the Court.   Class Counsel shall not file the Preliminary Approval Motion until such time that Defendants consent to the Preliminary Approval Motion, which consent shall not be unreasonably withheld.

2.3    **Denial of Preliminary Approval.**  If the Court denies the Motion for Preliminary Approval, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement.  Should reconsideration and/or should the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the Litigation will proceed as if no settlement had been attempted. Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation.  In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.4    **Final Order and Judgment from the Court.**  In the event that the Court issues an Order Granting Preliminary Approval, then thereafter, Plaintiffs will seek to obtain from the Court, as a condition of settlement, an Order Granting Final Approval in a form to be agreed upon by the Parties.  The Proposed Order Granting Final Approval will, among other things, (a) finally certify the Class for purposes of settlement, (b) enter judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.5, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Settlement and Release.  Plaintiffs shall provide drafts of the documents set forth above to Defendants for their review and approval prior to submitting them to the Court.  Class Counsel shall not file the Final Approval Motion until such time that Defendants consent to the Final Approval Motion, which consent shall not be unreasonably withheld.

2.5    **Class Notice**

(A)    Within 20 calendar days of the date of the Order Granting Preliminary Approval, Defendants will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the (1) names, (2) last known addresses, (3) last known telephone numbers, (4) social security numbers, (5) restaurant(s) worked, (6) dates of employment at each restaurant worked; (7) total hours worked by each FLSA Opt-In Plaintiff and each FLSA Class Member from July 22, 2007 through

6

the end of the Covered Period, and (8) total tips paid to each Class Member at each restaurant worked during the Covered Period, or as much of the aforementioned as available. Class Counsel agrees to use this data solely for the purposes of effectuating this Agreement and will comply with all state and federal laws that protect the privacy of current and former employees of Defendants. This document shall be deemed Confidential and shall be handled pursuant to the terms of the Parties' Stipulation and Order Regarding Confidential Information. Defendants shall be responsible for securing from the Claims Administrator a signed acknowledgment memorializing their receipt and understanding of these terms and the Claims Administrator, as a condition for being retained, shall become a signatory to the Parties' Stipulation and Order Regarding Confidential Information.

(B)   Within 15 calendar days after receiving the information described in Section 2.5(A), the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") in the form appended hereto as Exhibit A to all Class Members using each individual's last known address as recorded in Defendants' records and a W-9 form with a pre-paid, stamped return envelope. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt up to two re-mailings. Defendants' Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process.

(C)   The Claims Administrator shall, within 10 calendar days after the first mailing of the Notice, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

## 2.6   Class Member Opt-Out.

(A)   Any Class Member may request exclusion from the Class by "opting out." Any Class Member who chooses to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address, signature and telephone number of the Class Member to be valid. It must also contain the words "I elect to exclude myself from the settlement in *Capsolas v. Pasta Resources Inc.*" in order to be valid. To be effective, such Opt-Out Statements must also be sent via mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 30 calendar days after the Claims Administrator mails the Notice. The 30 day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 30 day period for any such Class Member will begin to run from the date of the second mailing (or, if there are more than 2

mailings, the final mailing) to such Class Member, unless another period is set by the court. The Claims Administrator shall not attempt more than 2 mailings of the Notice. The end of the "Opt-Out Period" shall be 30 days after the last day on which the Claims Administrator makes a mailing, but no later than 7 calendar days before the date of the Fairness Hearing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

(B) The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

(C) Notwithstanding any other provision of this Agreement, Defendants retain the right, in the exercise of their sole discretion, to nullify the Agreement within fifteen (15) days after expiration of the Opt-Out Period, if more than five percent (5%) of the Class Members, excluding the Plaintiffs named in the lawsuit encaptioned Amastal v. Pasta Resources, Inc., 10-cv-7748(RJH)(RLE), opt out of this Class. If Defendants wish to exercise this right, they must do so by written communication to Class Counsel, received by Class Counsel within the fifteen (15)-day period. Should Defendants exercise this option, then the Litigation will proceed as if no settlement had been attempted. Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

**2.7    Objections to Settlement.**

(A) Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be 30 calendar days after the Claims Administrator mails the Notice. The statement must contain the name, address, telephone number and signature of the Class Member to be valid. It must also contain the words "I object to the settlement in *Capsolas v. Pasta Resources Inc.*" and set forth the reasons for the objection. The Claims Administrator shall stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims

8

Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 calendar days after the end of the Opt-Out period.

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections.  An objector may withdraw his/her objections at any time.  Any Class Member who has requested exclusion may not submit objections to the settlement.

(C)     Any person who files an objection with the Court will give up any rights to separately sue the Defendants about the same legal claims in this lawsuit and will receive a settlement payment regardless of whether the objection is affirmed or overruled.

(D)     The Parties may file with the Court written responses to any objections no later than 7 calendar days before the Fairness Hearing.

**2.8     Motion for Judgment and Final Approval.**  Pursuant to Section 2.4, no later than ten (10) calendar days before the Fairness Hearing, Plaintiffs will file  a Motion for Judgment and for an Order Granting Final Approval.  Defendant shall approve of Plaintiffs' Motion for Judgment and for an Order Granting Final Approval before filing. The Fairness Hearing shall be held at the Court's convenience.

**2.9     Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) finally certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.6, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Settlement and Release.

**2.10     Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the  Parties agree to proceed as follows.  The Parties jointly agree to (a) seek reconsideration of the decision denying entry of Judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration is denied, or a mutually agreed-upon settlement is not approved:

(A)     The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by

Plaintiffs in this action.  No action or statement taken by Defendants throughout the settlement process shall be deemed as an admission of liability or fact.

(B)     The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

3.      **SETTLEMENT TERMS**

3.1     **Settlement Payment.**

(A)     Defendants agree to pay $5,250,000, which shall resolve and satisfy: (a) court-approved attorneys' fees and costs; (b) all amounts to be paid to Class Members; (c) court-approved service payments to Plaintiffs; (d) the Claims Administrator's fees; (e) any fees associated with investing and liquidating the Settlement Payment, and (f) any taxes incurred directly or indirectly by Defendants as a result of investing the Settlement Payment to the extent not covered by accrued interest.  Other than the employer's share of payroll taxes as described in Section 3.5(C), Defendants will not be required to pay more than $5,250,000.00 under this Agreement.

(B)     By no later than 30 days after this Court enters final approval of the Settlement, Defendants shall deposit $5,250,000.00 with Computershare Trust, NA as escrow agent and the Claims Administrator as paying agent (the "Escrow Account").  Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall be returned to Defendants.

(C)     Within 5 days of the Effective Date, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

(1)     Paying Class Counsel Court-approved attorneys' fees as described in Section 3.2(A).

(2)     Paying the Claims Administrator.

(3)     Reimbursing Class Counsel for all costs and expenses approved by the Court as described in Section 3.2(A).

(4)     Paying Plaintiffs' service payments in the amounts described in Section 3.3.

(5)     Paying Class Members their portion of the Settlement Payment as described in Section 3.4.

10

(D)     Should Defendants fail to make payment pursuant to this Section, Plaintiffs shall be entitled to seek from them all remedies available by law.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one-third of the Settlement Payment as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment. Defendants will not oppose such applications. Defendants shall have no additional liability for attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

**3.3     Payments to Plaintiffs.**  On or before the date that is ten (10) days prior to the Fairness Hearing, Plaintiff Stephanie Capsolas will apply to the Court to receive $20,000 from the Settlement Fund for services rendered to the Class. Plaintiffs Hernan Ricardo Alvarado, Jeffrey Cutaiar, Nicole Medvitz, Paul Toro, Daniel Jansen, Roger Caro, Chris Ell, Chris Forbes, and Jesse Patrick will apply to the Court to receive $10,000 each from the Settlement Payment for services rendered to the Class. Should Defendants decide to oppose such application, they must do so no later than five (5) days before the date of the Fairness Hearing. Plaintiffs shall have two additional days to submit reply papers. While any Class Member may oppose these requests, Defendants shall not encourage any Class Member to oppose the applications. The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

**3.4     Distribution to Class Members.**

(A)     A Class Member who does not opt out pursuant to Section 2.5(A) will be deemed eligible for a payment hereunder.

(B)     Notwithstanding the formulas below, no Qualified Class Member will be awarded a payment that is less than $50 (before taxes are deducted). In the event that a Qualified Class Member's settlement share under the calculation set forth in Section 3.4(C) is less than $50, his or her settlement share will be increased to $50, subtracted from the Alleged Tip Disgorgement Amount, and all other Qualified Class Members' settlement shares will be recalculated as set forth in Section 3.4(C).

(C)     A Qualified Class Member's proportionate share of the Net Settlement Payment shall be determined by the Claims Administrator pursuant to the formula set forth below:

(1)     **The Tip Credit Amount.**  $600,000 of the Net Settlement Amount (the "Tip Credit Amount") will be payable to FLSA Opt-In Plaintiffs and FLSA Class Members as follows.

(a)     Each FLSA Opt-In Plaintiff will receive 3 points for every hour worked between July 22, 2007 and the end of the Covered Period.

(b)     Each FLSA Class Member who is not an FLSA Opt-In Plaintiff will receive 1 point for every hour worked between July 22, 2007 and the end of the Covered Period.

(c)     The Tip Credit Amount will be divided by the total number of points for all FLSA Opt-In Plaintiffs and FLSA Class Members to determine the "Point Value."

(d)     The portion of the Tip Credit Amount payable to each FLSA Opt-In Plaintiff and FLSA Class Member will be determined by multiplying his or her total number of points by the Point Value.

(2)     **The Alleged Tip Disgorgement Amount.**  The amount remaining from the Net Settlement Amount after the deduction of the Tip Credit Amount shall be referred to as the "Alleged Tip Disgorgement Amount."  The Alleged Tip Disgorgement Amount shall be distributed among all Qualified Class Members, including FLSA Opt-In Plaintiffs and FLSA Class Members, as follows:

(i)     22% of the Alleged Tip Disgorgement Amount shall be distributed among all Babbo Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to Babbo Qualified Class Members shall be referred to as the "Babbo Alleged Tip Disgorgement Amount."

12

A)   The total tips paid to all Babbo Qualified Class Members ("Babbo Total Tips") will be calculated.

B)   The percentage of the Babbo Total Tips paid to each individual Babbo Qualified Class Member ("Babbo Individual Percentage") will be calculated.

C)   Each Babbo Qualified Class Member will be paid his or her Babbo Individual Percentage of the Babbo Alleged Tip Disgorgement Amount.

(ii)   24% of the Alleged Tip Disgorgement Amount shall be distributed among all Del Posto Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to Del Posto Qualified Class Members shall be referred to as the "Del Posto Alleged Tip Disgorgement Amount."

A)   The total tips paid to all Del Posto Qualified Class Members ("Del Posto Total Tips") will be calculated.

B)   The percentage of the Del Posto Total Tips paid to each individual Del Posto Qualified Class Member ("Del Posto Individual Percentage") will be calculated.

C)   Each Del Posto Qualified Class Member will be paid his or her Del Posto Individual Percentage of the Del Posto Alleged Tip Disgorgement Amount.

(iii)   12% of the Alleged Tip Disgorgement Amount shall be distributed among all El Mono Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to El Mono Qualified Class Members shall be referred to as the "El Mono Alleged Tip Disgorgement Amount."

A)   The total tips paid to all El Mono Qualified Class Members ("El Mono Total Tips") will be calculated.

B)   The percentage of the El Mono Total Tips paid to each individual El Mono Qualified Class Member ("El Mono Individual Percentage") will be calculated.

13

C)    Each El Mono Qualified Class Member will be paid his or her El Mono Individual Percentage of the El Mono Alleged Tip Disgorgement Amount.

(iv)    9% of the Alleged Tip Disgorgement Amount shall be distributed among all Esca Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to Esca Qualified Class Members shall be referred to as the "Otto Alleged Tip Disgorgement Amount."

A)    The total tips paid to all Otto Qualified Class Members ("Esca Total Tips") will be calculated.

B)    The percentage of the Otto Total Tips paid to each individual Esca Qualified Class Member ("Esca Individual Percentage") will be calculated.

C)    Each Esca Qualified Class Member will be paid his or her Esca Individual Percentage of the Otto Alleged Tip Disgorgement Amount.

(v)    8% of the Alleged Tip Disgorgement Amount shall be distributed among all Lupa Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to Lupa Qualified Class Members shall be referred to as the "Lupa Alleged Tip Disgorgement Amount."

A)    The total tips paid to all Lupa Qualified Class Members ("Lupa Total Tips") will be calculated.

B)    The percentage of the Lupa Total Tips paid to each individual Lupa Qualified Class Member ("Lupa Individual Percentage") will be calculated.

C)    Each Lupa Qualified Class Member will be paid his or her Lupa Individual Percentage of the Lupa Alleged Tip Disgorgement Amount.

(vi)    21% of the Alleged Tip Disgorgement Amount shall be distributed among all Otto Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to Otto Qualified Class Members shall be referred to as the "Otto Alleged Tip Disgorgement Amount."

14

        A)      The total tips paid to all Otto Qualified Class Members ("Otto Total Tips") will be calculated.

        B)      The percentage of the Otto Total Tips paid to each individual Otto Qualified Class Member ("Otto Individual Percentage") will be calculated.

        C)      Each Otto Qualified Class Member will be paid his or her Otto Individual Percentage of the Otto Alleged Tip Disgorgement Amount.

(vii)    4% of the Alleged Tip Disgorgement Amount shall be distributed among all Tarry Lodge Qualified Class Members, including FLSA Opt-In Plaintiffs.  The portion of the Alleged Tip Disgorgement Amount distributed to Tarry Lodge Qualified Class Members shall be referred to as the "Tarry Lodge Alleged Tip Disgorgement Amount."

        A)      The total tips paid to all Tarry Lodge Qualified Class Members ("Tarry Lodge Total Tips") will be calculated.

        B)      The percentage of the Tarry Lodge Total Tips paid to each individual Tarry Lodge Qualified Class Member ("Tarry Lodge Individual Percentage") will be calculated.

        C)      Each Tarry Lodge Qualified Class Member will be paid his or her Tarry Lodge Individual Percentage of the Tarry Lodge Alleged Tip Disgorgement Amount.

(D)    Defendants and the Claims Administrator shall exchange personal information, including, but not limited to, the name address, social security number, and telephone number for each Qualified Class Members as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5. The Claims Administrator shall be responsible for maintaining and securing all personal information.  In addition, as provided in Section 2.5(A) above, Defendants shall be responsible for securing from the Claims Administrator a signed acknowledgment memorializing their receipt and understanding of these terms and the Claims Administrator, as a condition for being retained, shall become a signatory to the Parties' Stipulation and Order Regarding Confidential Information.

(E)    The Claims Administrator shall mail to all Qualified Class Members their proportionate share of the Net Settlement Fund within 5 days of the Effective

Date.  The Claims Administrator shall use "reasonable efforts" to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses.  Reasonable efforts shall include using social security numbers to obtain better address information and, for Qualified Class Members whose payment is greater than $100, attempting to call such Qualified Class Members.  Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator.

(F)    Qualified Class Members will have one hundred eighty (180) calendar days after their check date to redeem their settlement payments.  If Qualified Class Members do not redeem their settlement payment checks within the 180 day period, their settlement checks will be void.  If a Qualified Class Member alerts Class Counsel or the Claims Administrator during the 180 day period to redeem settlement payments that he or she has not received his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and reissue that Qualified Class Member's settlement check.  All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.

(G)    If, in the view of the Claims Administrator, there are sufficient funds remaining in the Escrow Account after all settlement checks have been redeemed or rendered void to make a second distribution, the Claims Administrator shall redistribute the money among Qualified Class Members in *pro-rata* payments based on the formula described in this Section.  The Claims Administrator will use the amount remaining to pay for the cost of the second distribution.  If, in the Claims Administrator's view, a second distribution is not administratively feasible because insufficient funds remain in the Escrow Account after the payments described in Sections 3.1 have been distributed, the money will be donated to a *cy pres* designee to be negotiated by the parties and subject to the Court's approval.  If the parties are unable to agree on a *cy pres* designee, they may submit their dispute to the Court.  There will be no reversion to Defendants.  All interest accrued on the Settlement Payment from the escrow account is property of the Defendants.

(H)    All payments to Class Members made pursuant to this Agreement shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members.  It is expressly understood and agreed that the receipt of such payments will not entitle any Class Member to additional compensation or benefits under any of Defendants' bonus, contest or other compensation or benefit plans or agreements in place.

**3.5    Taxability of Settlement Payments.**

16

(A)     For tax purposes, 50% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and prejudgment interest.

(B)     Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made either 1) with backup withholding for each Class Member who fails to provide the Claims Administrator with a fully executed W-9; or 2) without withholding, subject to a Class Member's full execution of a Form W-9, and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any enhancement awards pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     Defendants shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to Defendants' share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Payment, and shall not be paid out of the Settlement Payment. The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

(D)     Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)). Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

**3.6 Release**

(A)     **Release of Claims.** Upon the Effective Date, and except as to such rights or claims as may be created by th    is Agr eement, each FLS A Opt-In Plaintiff and Qualified Class Mem ber, on his or her     behalf, and on behalf of his or her

17

respective current, former and future heirs, spo uses, executors, adm inistrators, agents, and attorneys, forever fully releases and discharges all Releasees from any FLSA and NYLL claim s, claim s pursuant to the New York Code of Rules and Regulations, claim s pursuant to the      New York State Wage Order for the Hospitality Industry, claims under any other New York State Wage Order, and all other wage and hour claim s that were   or could have been asserted in the Litigation, whether kno wn or unknown, thr ough the date o f preliminary approval of this Agreem ent, including all inte rest, liquidated dam ages, and attorneys' fees and costs related to such claims.

Upon endorsing their settlem ent checks, each FLSA Class Mem ber who has not or does not file a consent to Join Form w ith the Court on or bef ore the date that this Agreement is fully executed becom es an FL SA Opt-In P laintiff bound by the judgment of the Court and fo rever and fully releases an d discharges all Releasees from all FL SA and NYLL claim s, claim s pursuant to the New York Code of Rules and Regulations, claim s pursuant to the New York State W age Order for the Hospitality Industry, claims under any other New York State Wage Order, and all other wage and hour claim s t hat were or could have been asserted in the Litigation, whether kno wn or unknown, thr ough the date o f preliminary approval of this Agreem ent, including all inte rest, liquidated dam ages, and attorneys' fees and costs related to such claims.

(B)     **Release of Fees and Costs for Settled Matters.**  Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class, except that Class Counsel and Plaintiffs do not release, acquit, and/or discharge attorneys' fees or costs to which they may be entitled under Section 3.1(D) of this Agreement.

(C)     **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(D)     **Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.  Settlement of the Litigation, negotiation and execution of this

18

Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

### 3.7 Confidentiality

(A)     Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel agree that they will not issue or cause to be issued any press release or communication to any third party and will not otherwise communicate to any media or media representative, including but not limited to the electronic, print, or digital media or social networking site, information regarding the Litigation, the claims asserted therein, the settlement of the Litigation and/or this Agreement, or the facts and events leading up to same, or the amount of money paid to resolve the Litigation. If contacted by the press or other forms of media, including but not limited to any blogs or other social media websites, the parties and their counsel will state that the matter has been resolved to the satisfaction of all parties.  Notwithstanding the terms of this paragraph, the parties shall be free to make whatever disclosures they deem necessary and appropriate to their attorneys and financial and tax advisors, provided those disclosures are truthful.

(B)     Plaintiffs and Class Counsel acknowledge and agree that this confidentiality provision is an express and absolute condition of this Agreement, is bargained-for consideration for this Agreement, and is not a mere recital, and that any violation of the terms and conditions of this confidentiality provision shall constitute a material breach of this Agreement.  Plaintiffs and Class Counsel acknowledge that a breach of the confidentiality provisions contained in this Agreement may cause great damage and injury to Defendants, that such damage or injury may be difficult or impossible to quantify, and that such provisions provide a material element of Defendants' consideration for and inducement to enter into this Agreement.  Defendants may seek monetary damages for a breach of this provision and may also be entitled to obtain an injunction against the Plaintiff or Class Counsel from any court having jurisdiction over this matter, restraining the Plaintiff or Class Counsel from any further violation of this confidentiality provision.  The waiver by any party of a breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach by any party.  The breach of this section or the granting of other relief by a court shall not affect the continuing validity or enforceability of Plaintiffs' and Class Members' release of claims herein.

19

### 3.8 Non-retaliation

Defendants shall continue to abide by their non-retaliation obligations under the FLSA and NYLL and shall not retaliate in any manner against Class Members who participate in the settlement.

### 3.9 Miscellaneous

(A) **Cooperation Among the Parties.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.

(B) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.

(C) **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(D) **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(E) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(F) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(G) **Blue Penciling.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect, except that if the Court finds that the Release provisions in Section 3.6 are void, then the Agreement shall have no effect whatsoever.

(H) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to

choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(I)    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

(J)    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(K)    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument. The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

(L)    **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED: February __, 2012    Pasta Resources Inc.

By: _____

Its: _____

21

(K)     **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.  The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

(L)     **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED:  February 14, 2012          Pasta Resources Inc.

                                   By: _____

                                   Its: _____

DATED:  February 14, 2012          Babbo LLC

                                   By: _____

                                   Its: _____

DATED:  February 14, 2012          Pane Sardo LLC

                                   By: _____

                                   Its: _____

DATED:  February 14, 2012          El Mono LLC

                                   By: _____

                                   Its: _____

22

DATED:  February 14, 2012        La Loggia LLC

                                 By: _____

                                 Its: _____

DATED:  February 14, 2012        Mario Batali

                                 _____

DATED:  February 14, 2012        Joseph Bastianich

                                 _____

DATED:  February ___, 2012       Stephanie Capsolas

                                 _____

DATED:  January ___, 2012        Hernan Ricardo Alvarado

                                 _____

DATED:  January ___, 2012        Jeffrey Cutaiar

                                 _____

DATED:  January ___, 2012        Nicole Medvitz

                                 _____

DATED:  January ___, 2012        Paul Toro

                                 _____

23

DATED: February __, 2012          Babbo LLC

                                   By: _____

                                   Its: _____


DATED: February __, 2012          Pane Sardo LLC

                                   By: _____

                                   Its: _____


DATED:  February __, 2012          El Mono LLC

                                   By: _____

                                   Its: _____


DATED:  February __, 2012          La Loggia LLC

                                   By: _____

                                   Its: _____


DATED:  February __, 2012           Mario Batali

                                   _____


DATED:  February __, 2012          Joseph Bastianich

                                   _____


DATED:  February 14, 2012          Stephanie Capsolas

                                   _____
                                            22

DATED: February 15, 2012     Hernan Ricardo Alvarado

DATED: February ___, 2012     Jeffrey Cutaiar

DATED: February ___, 2012     Nicole Medvitz

DATED: February ___, 2012     Paul Toro

DATED: February ___, 2012     Daniel Jansen

DATED: February ___, 2012     Roger Caro

DATED: February ___, 2012     Chris Ell

DATED: February ___, 2012     Chris Forbes

DATED: February ___, 2012     Jesse Patrick

23

DATED: February ___, 2012        Hernan Ricardo Alvarado

DATED: February 16, 2012        Jeffrey Cutsiar

DATED: February ___, 2012        Nicole Medvitz

DATED: February ___, 2012        Paul Toro

DATED: February ___, 2012        Daniel Jansen

DATED: February ___, 2012        Roger Caro

DATED: February ___, 2012        Chris Ell

DATED: February ___, 2012        Chris Forbes

DATED: February ___, 2012        Jesse Patrick

23

DATED: February __, 2012       _____

                                     Hernan Ricardo Alvarado

DATED: February __, 2012       _____

                                     Jeffrey Cutaiar

DATED: February 9, 2012       _____

                                     Nicole Medvitz

DATED: February __, 2012       _____

                                     Paul Toro

DATED: February __, 2012       _____

                                     Daniel Jansen

DATED: February __, 2012       _____

                                     Roger Caro

DATED: February __, 2012       _____

                                     Chris Ell

DATED: February __, 2012       _____

                                     Chris Forbes

DATED: February __, 2012       _____

                                     Jesse Patrick

DATED: February ___, 2012     Hernan Ricardo Alvarado

DATED: February ___, 2012     Jeffrey Cutaiar

DATED: February ___, 2012     Nicole Medvitz

DATED: February _11_, 2012     Paul Toro

*Paul T. Toro*

DATED: February ___, 2012     Daniel Jansen

DATED: February ___, 2012     Roger Caro

DATED: February ___, 2012     Chris Ell

DATED: February ___, 2012     Chris Forbes

DATED: February ___, 2012     Jesse Patrick

23

DATED:  February ___, 2012          Hernan Ricardo Alvarado

DATED:  February ___, 2012          Jeffrey Cutaiar

DATED:  February ___, 2012          Nicole Medvitz

DATED:  February ___, 2012          Paul Toro

DATED:  February 14, 2012           Daniel Jansen

DATED:  February ___, 2012          Roger Caro

DATED:  February ___, 2012          Chris Ell

DATED:  February ___, 2012          Chris Forbes

DATED:  February ___, 2012          Jesse Patrick

23

DATED:  February __, 2012     Hernan Ricardo Alvarado

DATED:  February __, 2012     Jeffrey Cutaiar

DATED:  February __, 2012     Nicole Medvitz

DATED:  February __, 2012     Paul Toro

DATED:  February __, 2012     Daniel Jansen

DATED:  February 13, 2012     Roger Caro

DATED:  February __, 2012     Chris Ell

DATED:  February __, 2012     Chris Forbes

DATED:  February __, 2012     Jesse Patrick

23

DATED:  February __, 2012          Hernan Ricardo Alvarado
_____

DATED:  February __, 2012          Jeffrey Cutaiar
_____

DATED:  February __, 2012          Nicole Medvitz
_____

DATED:  February __, 2012          Paul Toro
_____

DATED:  February __, 2012          Daniel Jansen
_____

DATED:  February __, 2012          Roger Caro
_____

DATED:  February 12, 2012          Chris Ell
_____

DATED:  February __, 2012          Chris Forbes
_____

DATED:  February __, 2012          Jesse Patrick
_____

23

DATED: February ___, 2012  <u>        </u>
              Hernan Ricardo Alvarado

DATED: February ___, 2012  <u>        </u>
              Jeffrey Cutaiar

DATED: February ___, 2012  <u>        </u>
              Nicole Medvitz

DATED: February ___, 2012  <u>        </u>
              Paul Toro

DATED: February ___, 2012  <u>        </u>
              Daniel Jansen

DATED: February ___, 2012  <u>        </u>
              Roger Caro

DATED: February ___, 2012  <u>        </u>
              Chris Ell

DATED: February _14_, 2012  <u>        </u>
              Chris Forbes

DATED: February ___, 2012  <u>        </u>
              Jesse Patrick

23

DATED: February ___, 2012      _____
                                                       Hernan Ricardo Alvarado

DATED: February ___, 2012      _____
                                                       Jeffrey Cutaiar

DATED: February ___, 2012      _____
                                                       Nicole Medvitz

DATED: February ___, 2012      _____
                                                       Paul Toro

DATED: February ___, 2012      _____
                                                       Daniel Jansen

DATED: February ___, 2012      _____
                                                       Roger Caro

DATED: February ___, 2012      _____
                                                       Chris Ell

DATED: February ___, 2012      _____
                                                       Chris Forbes

DATED: February 21, 2012      _____
                                                       Jesse Patrick

23

# Exhibit A

# COURT-AUTHORIZED NOTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**If you were employed as a captain, server, waiter, busser, runner, backwaiter, bartender, and/or barback at Babbo, Bar Jamon, Casa Mono, Esca, Del Posto, Lupa, Otto, or Tarry Lodge, you could receive a payment from a class action settlement.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- Current and former employees of Babbo, Bar Jamon, Casa Mono, Esca, Del Posto, Lupa, Otto, and Tarry Lodge ("the Restaurants") sued the restaurants and their owners, Mario Batali and Joseph Bastianich (all together, "the Defendants"), claiming that they violated the federal Fair Labor Standards Act and the New York Labor Law by misappropriating customer tips, unlawfully taking a tip credit against their wages, and failing to pay them at the proper overtime and minimum wage rate and other wages.

- The employees and the Defendants have settled.  The Defendants have agreed to pay $5,250,000 to current and former employees who chose to participate in the settlement.

- Based on the formula created in the settlement, you are entitled to receive approximately $_____.

- Your legal rights may be affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, you will remain part of the class and receive the payment amount identified above.  You will give up any rights to separately sue the Defendants about the same legal claims in this lawsuit. |

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
**(212) 245-1000 OR (877) 468-8836**

| | |
|---|---|
| **EXCLUDE YOURSELF** | By excluding yourself, you give up any right to receive a payment from this settlement.  You will, however, keep any rights to sue the Defendants about the same legal claims in this lawsuit. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

# BASIC INFORMATION

### 1. What is the purpose of this notice?

The Court has ordered that this Notice be sent to you because you worked at Babbo, Bar Jamon, Casa Mono, Del Posto, Esca, Lupa, Otto, and/or Tarry Lodge as a captain, server, waiter, busser, runner, backwaiter, bartender, and/or barback between July 22, 2004 and the [date on which the Court grants preliminary approval].  The purpose of this Notice is to inform you of your rights and options **and the deadlines to exercise them** under the Settlement Agreement resolving the Lawsuit.

The Court still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

### 2. What is this lawsuit about?

The Plaintiffs – the employees who brought the lawsuit – raised claims under the Fair Labor Standards Act and New York Labor Law on their own behalf and on behalf of similarly situated employees, alleging that the Defendants: (1) unlawfully misappropriated a portion of employees' tips amounting to between 4-5% of the wine sales each shift, (2) unlawfully took a "tip credit" and paid tipped employees less than the required minimum wage and overtime rates, and (3) failed to pay tipped employees "spread of hours" premium pay when their workdays lasted more than ten hours.  The Plaintiffs sought recovery of, among other things, misappropriated tips, unpaid overtime, minimum, and spread of hours wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
**(212) 245-1000 OR (877) 468-8836**

The Honorable Ronald L. Ellis, United States Magistrate Judge in the Southern District of New York, is overseeing this class action.   The lawsuit is known as *Capsolas, et al. v. Pasta Resources, Inc., et al*., No. 10 Civ. 5595.

### 3. Why is this a class action?

In a class action, one or more individuals called Class Representatives sue on behalf of others who have the same or similar claims.   Here, the Plaintiffs are the Class Representatives. The people with the same or similar claims are called Class Members.   In class actions, one court resolves the issues for all Class Members, except for those who decide to exclude themselves from the Class, as explained in paragraph 10 below.

### 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants.   Both sides believe they would have prevailed at trial, but there was no trial.   Instead, both sides agreed to a settlement. That way they avoid the cost of a trial and the risk that Defendants would not have been able to pay a judgment if the Plaintiffs had prevailed at trial, and the people affected will get compensation.   The Plaintiffs and their attorneys think the settlement is best for all involved.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 5.  What does the settlement provide?

The Defendants have agreed to pay $5,250,000 to be divided among the Plaintiffs and the Class. The settlement amount will be divided based on the following factors: (1) the restaurant(s) at which you worked, (2) the number of hours you worked, and (3) whether you submitted a Consent to Join form in response to the court-authorized notice that was previously mailed to you in the summer of 2011.

The settlement also asks the Court to approve service payments to the Plaintiffs who brought the lawsuit.  It will ask the Court to approve a $20,000 payment to Plaintiff Stephanie Capsolas, and $10,000 payments to Plaintiffs Hernan Ricardo Alvarado, Jeffrey Cutaiar, Nicole Medvitz, Paul Toro, Daniel Jansen, Roger Caro, Chris Ell, Chris Forbes, and Jesse Patrick.  These service payments are in recognition of the many hours of service the Plaintiffs gave to the Class by, among other things, supplying documents, sitting for depositions, and helping the attorneys investigate and prosecute the claims on behalf of the class.

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
**(212) 245-1000 OR (877) 468-8836**

**6. How much will my payment be?**

Based on the formula in the settlement agreement, you will be entitled to receive approximately $ _____. Your settlement award will be divided into two portions for tax purposes: a wage portion representing backpay and a non-wage portion representing liquidated damages and interest. Please return the enclosed W-9 Form if you would like to receive the non-wage portion of your settlement award without withholding. If you do not return the W-9 Form, you will still receive the non-wage portion, but backup withholding will be deducted from your award.

# HOW YOU GET A PAYMENT

**7. How can I get my payment?**

If you received this notice and do not exclude yourself, as explained in paragraph 10, you will receive a payment. You do not need to take any action in order to receive your payment. However, if your address changes before you receive your settlement check, please contact the Claims Administrator at the address below to update your mailing address:

[INSERT CLAIMS ADMINISTRATOR CONTACT]

**8. When will I get my settlement payment?**

The Court will hold a fairness hearing on **[INSERT DATE]** at **[INSERT TIME]** to decide whether to approve the settlement. If the Court approves the settlement, then your payment will be mailed to you within 35 days of the Court's approval order unless there is an appeal.

**9. What am I giving up by staying in the class?**

Unless you exclude yourself (as explained in paragraph 10 below), you will remain a Class Member. That means that you cannot sue, continue to sue, or be a party of any other lawsuit against the Defendants for any Fair Labor Standards Act or New York Labor Law wage and hour claim through the effective date of the settlement. It also means that all of the Court's orders will apply to you and legally bind you.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must exclude yourself from class. The process of excluding yourself is also sometimes referred to as "opting out."

QUESTIONS?
CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP
3 PARK AVENUE, 29TH FLOOR, NY, NY 10016
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
(212) 245-1000 OR (877) 468-8836

**10. How do I exclude myself from the settlement?**

To exclude yourself from the settlement, you must send a letter by First Class U.S. mail stating, "I elect to exclude myself from the settlement in *Capsolas, et al. v. Pasta Resources, Inc., et al*., No. 10 Civ. 5595."  Be sure to include your name, address, telephone number, and your signature. Your exclusion request must be received no later than **[INSERT DATE 30 DAYS FROM DATE OF MAILING]** and must be mailed to:

[CLAIMS ADMINISTRATOR ADDRESS TO BE INSERTED]

If you ask to be excluded from the settlement, you will not receive a settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may also be able to sue (or continue to sue) the Defendants in the future.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

**11. How do I tell the Court that I object to the settlement?**

You can object to the settlement agreement if you don't like any part of it.  You may object to any part of the settlement, such the settlement amount, the attorneys' fees and/or the service payments to the lead plaintiffs. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via U.S. Mail stating that you object to the settlement agreement in *Capsolas, et al. v. Pasta Resources, Inc., et al*., No. 10 Civ. 5595, and stating the reasons why you object. Be sure to include your name, address, telephone number, and signature.  Any objections must be received by **[INSERT DATE 30 DAYS FROM DATE OF MAILING]**, and mailed to:

[CLAIMS ADMINISTRATOR ADDRESS TO BE INSERTED]

**12. What's the difference between objecting to the settlement and excluding myself from it?**

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you do not exclude yourself from the class. Excluding yourself is telling the Court that you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
**(212) 245-1000 OR (877) 468-8836**

# THE LAWYERS REPRESENTING YOU

**13.  Do I have a lawyer in this case?**

Yes.  The Court has decided that the lawyers at the law firms of Joseph, Herzfeld, Hester & Kirschenbaum LLP and Outten & Golden LLP are qualified to represent you and all of the other class members.  These lawyers have been designated as "Class Counsel" in this lawsuit.  More information about the law firms, their practices, and their lawyers' experience are available at www.jhllp.com and www.outtengolden.com.

**14.  How will the lawyers be paid?**

The Plaintiffs have entered into a retainer agreement with Class Counsel.  Under the agreement, Class Counsel will ask the Court to approve up to one-third of the settlement amount as their attorneys' fees.  The fees will pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  Plaintiffs' Counsel will also ask the Court to approve the reimbursement of their out-of-pocket costs of no more than $15,000. You may ask for a copy of the retainer agreement by calling or writing Class Counsel at the telephone number or address below.

# THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you don't have to.

**15. When and where will the Court decide whether to approve the settlement agreement**

The Court will hold a fairness hearing at **[INSERT TIME]** on **[INSERT DATE]** at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, before U.S. Magistrate Judge Ronald L. Ellis in Courtroom 18D.

At the fairness hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are any objections, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the settlement. We do not know how long the Court's decision will take.

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
**(212) 245-1000 OR (877) 468-8836**

**16. Do I have to come to the fairness hearing?**

No, even if you filed an objection, Class Counsel will represent you at the hearing.  Of course, you are welcome to attend (at your own expense) if you so desire. The Court will consider any objections received in a timely manner, even if the individual who sent in the objection does not appear at the fairness hearing. You may also pay your own lawyer to attend the fairness hearing, but it is not necessary.

**17. May I speak at the fairness hearing?**

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter stating, "Notice of Intention to Appear in *Capsolas, et al. v. Pasta Resources, Inc., et al.*, No. 10 Civ. 5595."  Be sure to include your name, address, telephone number, and signature.  Your Notice of Intention to Appear must be postmarked no later than **[INSERT DATE 30 DAYS FROM DATE OF MAILING]**, and mailed to:

[CLAIMS ADMINISTRATOR ADDRESS TO BE INSERTED]

Again, you cannot speak at the hearing if you exclude yourself from the settlement agreement.

# GETTING MORE INFORMATION

**18.  Are there more details about the settlement?**

You can obtain more information about the settlement or obtain a copy of the settlement agreement by contacting Class Counsel at:

D. Maimon Kirschenbaum and Denise Schulman
Joseph, Herzfeld, Hester & Kirschenbaum LLP
233 Broadway, 5th Floor
New York, NY 10279
212-688-5640
denise@jhllp.com

Rachel Bien and Dana Sussman
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
212-245-1000
BataliTipLawsuit@outtengolden.com

7

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
**BATALITIPLAWSUIT@OUTTENGOLDEN.COM**
**(212) 245-1000 OR (877) 468-8836**

If you call or write, you should refer to the Mario Batali restauant case.

DATED:       [INSERT MONTH] ___, 2012

**QUESTIONS?**
**CONTACT DANA SUSSMAN AT OUTTEN & GOLDEN LLP**
**3 PARK AVENUE, 29TH FLOOR, NY, NY 10016**
BATALITIPLAWSUIT@OUTTENGOLDEN.COM
**(212) 245-1000 OR (877) 468-8836**